THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEVE L. ROBINSON, Defendant-Appellant.

First District (5th Division)   No. 83—1180

Opinion filed February 27, 1987.

PINCHAM, J., dissenting.

Paul P. Biebel, Acting Public Defender, of Chicago (Emily Eisner, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Nicholas Geanopoulos, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendant, Steve Robinson, appeals from his conviction for residential burglary. In his appeal defendant contends: (1) he was not proven guilty beyond a reasonable doubt; (2) the trial court improperly excluded his exculpatory out-of-court statements; (3) evidence concerning a separately tried accomplice was improperly admitted; (4) two prejudicial and erroneous instructions, which had been refused, were inadvertently read to the jury; and (5) the prosecutor's final argument to the jury included improper and prejudicial statements.

We affirm. Pertinent to our decisions are the following facts.

The complainant, Clara Turner, testified that when she returned to her home at 4840 West Hubbard Street on December 21, 1982, between 12:30 and 1 p.m. she found the door lock removed and some of her property missing, including several burgundy-colored coats, two jars of coins, a telephone, a television set, an Atari, and 10 jars of chemical hair relaxer. She went to a nearby auto garage to locate her property. She never recovered or saw her property again nor did she see who committed the crime.

Armet Pettis, a next door neighbor of Clara Turner, testified that on December 21, 1982, at about 11 a.m. he went to Turner's front porch to look for the mailman. He saw defendant and Dwayne Nixon stepping off the sidewalk in front of Clara Turner's house. Nixon was carrying an object in his arms, while defendant carried a box under his left arm, a plastic garbage bag, and several jackets draped over his right shoulder. Defendant and Nixon fled southwest from Turner's house. Pettis, after telling his son to call the police, attempted to follow the two men but lost them.

Police officer Kenneth Angarone testified that he and his partner, in response to a radio call, went to Turner's home where they conferred with her for about 20 to 25 minutes and then went to a nearby automobile repair shop owned by defendant's father. After they talked to the defendant, they went to a house in the 4900 block of Hubbard Street looking for Dwayne Nixon. When they were told he was not there, they returned to the complainant's house. After they talked to Armet Pettis on the telephone, they returned to Nixon's home on Hubbard Street where they found him and returned with him to Robinson's father's garage. They took both defendant and Nixon back

to the complainant's house. Pettis was there. The officers patted defendant down after they had him step out of the police car. After they told defendant to face west and then north, Pettis said, "That's him. That's Steve. That's the one who broke into the house." The officers then told Dwayne Nixon to stand in front of the police car and Pettis identified Nixon stating, "That is the second man who broke into the house." Officer Angarone and his partner then left with defendant and Nixon.

Defendant and Nixon were both charged with the burglary of Clara Turner's house and were tried separately. Nixon was found guilty of misdemeanor theft following a bench trial and was sentenced to a year's probation.

OPINION

■■ Defendant first contends he was not proven guilty beyond a reasonable doubt because the identification of him by an eyewitness, Armet Pettis, was "doubtful and uncertain" and because defendant's alibi witness was unimpeached. We do not agree. The evidence, if believed by the jury, was sufficient to prove defendant's guilt.

■ Where the identification of an accused is at issue, the testimony of one witness is sufficient to convict even though such testimony is contradicted by the accused, provided the witness is credible and he viewed the accused under circumstances that would permit a positive identification to be made. (*People v. Miller* (1981), 101 Ill. App. 3d 1029, 428 N.E.2d 1038.) The credibility of an identification depends rather upon whether the witness had a full and adequate opportunity to observe the defendant. *People v. Witherspoon* (1975), 33 Ill. App. 3d 12, 337 N.E.2d 454.

Clearly in the case at bar Armet Pettis had ample opportunity to observe the defendant as the defendant walked from Clara Turner's house, when he turned around to pick up the garbage bag, and while Pettis followed him. Also, Pettis testified that he had previously seen the defendant approximately 20 times when Pettis went to the defendant's father's automobile garage to have his car serviced. Pettis also saw the defendant about a week before the incident when he went to the garage to get a tire repaired. Under these circumstances, Pettis had an excellent opportunity to observe the defendant. The credibility and certainty of Pettis' identification were enhanced by his prior acquaintance with the defendant. Similarly, in *People v. Lawson* (1978), 65 Ill. App. 3d 755, 382 N.E.2d 878, a witness testified that he knew the defendant prior to the burglary and recognized him. The court stated that this acquaintance, coupled with the witness' testi-

mony identifying the defendant as the burglar, provided a sufficient basis for the jury to find the defendant guilty beyond a reasonable doubt.

The case relied on by the defendant, *People v. McGee* (1961), 21 Ill. 2d 440, 173 N.E.2d 434, is distinguishable. In *McGee*, the defendant's burglary conviction was reversed because none of the identification witnesses had more than a fleeting view of the intruder and none claimed to have a satisfactory view of the intruder's features. The court therein stated that the lighting conditions were uncertain and the distances involved in the witnesses' view of the intruder "tend[ed] to impair the weight to be afforded their testimony and leads us to conclude there was no real basis for positive identification." (21 Ill. 2d 440, 445, 173 N.E.2d 434, 436-37.) Such uncertainties were not present in Pettis' identification of the defendant in the case before us. We conclude that the evidence, if believed by the jury, was sufficient to establish the defendant's identity beyond a reasonable doubt.

Defendant further contends that his alibi witness, James R. Walker, was unimpeached. Walker testified that his car broke down the morning of the incident and that he walked to the garage owned by defendant's father and arrived there at about 10:10 or 10:15 a.m. Three or four men from the garage, including the defendant, helped Walker push his car five or six blocks to the garage and arrived there at about 10:30 or 10:40 a.m. From there Walker, the defendant and another man, "Sonny," used another person's car to go to an auto parts store and a gas station for gas and then returned to the garage at about 12:20 p.m. Walker testified that the defendant was in the backseat of the car at all times. When they arrived back at the garage, defendant and Sonny worked on Walker's car.

The State however points out certain alleged inconsistencies in Walker's testimony: the time Walker arrived at the garage with defendant after his car was pushed there and the time Walker, the defendant, and others went to the auto parts store. Defendant contends Walker's testimony was corroborated by a receipt from the garage but the receipt was never admitted into evidence. Any discrepancies in the testimony were for the jury's resolution. Defendant contends that alibi evidence cannot be disregarded where the sole and only evidence contradicting it rests upon an uncorroborated single identification of the defendant as the person who committed the crime, citing *People v. McGee* (1961), 21 Ill. 2d 440, 173 N.E.2d 434. But such is not the case here. There was sufficient evidence in this case to satisfactorily establish the defendant's identity beyond a reasonable doubt. We do not therefore conclude, as defendant urges, that

his alibi witness was unimpeached.

Defendant also contends that because the complainant, Clara Turner, and the arresting officer, Officer Angarone, were allowed to testify that they accused the defendant of burglarizing Turner's house, the trial court erred when it excluded the defendant's exculpatory statements. This contention is not supported by the record. There was no evidence presented to the jury that Clara Turner accused the defendant of burglarizing her house. The testimony in this regard was elicited by defendant's attorney during cross-examination of Turner as follows:

"THE WITNESS [Clara Turner]: I went to 4800 on Kedzie. That is around LeMoyne and Kedzie, to a garage.

Q. There is a garage located there, is that right?

A. Right.

Q. And did you see Steve Robinson at that garage?

A. Yes, I did.

MR. QUINN [Assistant State's Attorney]: Judge, objection to the line of questions. We had Motions on this Friday.

MR. POLIKOFF [Defense Counsel]: May we have a side bar?

(Whereupon, the following proceedings were had out of the hearing of the Jury):

MR. QUINN: Judge, we had a Motion In Liminae [sic] on this. The Motion in Liminae [sic] was per the testimony at the preliminary hearing. She went to the garage and she confronted Steve and said, 'Give me my property back, and it won't go any further.' And his response to her was, 'I don't have your property.' It's an exculpatory statement. We had a Motion in Liminae [sic]. The ruling was that he cannot go into that, and counsel agreed to that.

MR. POLIKOFF: *I have agreed.*

MR. QUINN: Then there is no purpose for this line of questions at all, Judge.

THE COURT: I don't know. He understands the ruling.

(WHEREUPON, the following proceedings were had in the presence and hearing of the Jury):

BY MR. POLIKOFF:

Q. Now, when you arrived at the garage, I believe you stated you saw Steve Robinson there, is that correct?

A. Yes.

Q. You had a conversation with him, is that correct?

A. Right." (Emphasis added.)

■ The fact that Clara Turner testified that she had a conversation with the defendant did not indicate to the jury that she accused the defendant of burglarizing her home or that the defendant remained silent as a "tacit admission," as defendant contends. Moreover, as the record shows, defense counsel agreed at the pretrial hearing on the State's motion *in limine* that defendant's exculpatory statements during his conversation with Clara Turner would not be admitted. Defense counsel again agreed to this at trial.

Defendant's alleged exculpatory statement excluded during cross-examination of Officer Angarone was as follows:

"Q. Now, after you had this conversation with Clara Turner, you went directly from there to a garage, is that correct?

A. The first conversation with her?

Q. The one that you had at her house.

A. The first conversation?

Q. Yes.

A. Yes, Sir.

Q. And that's when you first saw Steve Robinson, the defendant in this case, is that correct?

A. Yes.

* * *

Q. And you took him for a ride in your car, is that correct?

A. Yes.

Q. *And you asked him various questions while you were inside the car, is that correct?*

A. *More we told him what he was being accused of.*

MR. POLIKOFF [Defense Counsel]: If I may have a side bar." (Emphasis added.)

During the side-bar proceeding defendant's attorney told the court that Officer Angarone's response, "we told him what he was being accused of," was an uninvited comment and that he was obligated "to inquire what *** [defendant's] response was to that accusation." The court stated that Officer Angarone's response was "all in response to your question" and refused defense counsel's request to elicit from Officer Angarone the defendant's response.

■ We agree with the defendant that Officer Angarone's response was an uninvited comment. The question to Angarone was simply whether he asked the defendant questions while they were in the car. The answer to this question simply required either a yes or no answer and did not call for the response Angarone gave. However, informing defendant of the offense of which he was accused was not the same as accusing the defendant of the commission of the offense.

The defendant was not harmed because the jury was not informed of the defendant's response to Officer Angarone's unsolicited comment. The jury could have reasonably inferred that the defendant did not admit that he committed the offense for had he done so the State would have presented evidence of such admission to the jury. We conclude that the defendant's contention that the trial court erred in excluding his alleged exculpatory response to Officer Angarone's comment is without merit.

■ We next consider the trial court's admission of evidence concerning Dwayne Nixon, defendant's alleged accomplice, as evidence against the defendant. Nixon was sentenced to a year's probation for misdemeanor theft and did not testify in this case. Over defendant's objection the trial court permitted Armet Pettis to identify Dwayne Nixon in a picture which was a State's exhibit. The trial court also permitted Officer Angarone to testify about Nixon's arrest. Angarone's testimony was, in part, as follows:

"Q. What did Pettis do when Dwayne Nixon was brought out of the car?

A. He said, 'That is the second man that broke into the house.'

MR. POLIKOFF [Defense attorney]: Objection.

THE COURT: Overruled.

BY MR. QUINN:

Q. Thereafter, did you go back to your partner?

A. Yes, Sir, I did.

Q. What did you do there?

A. I informed my partner we had a positive I.D.

MR. POLIKOFF: Objection; characterization and hearsay.

Q. Did you and your partner then leave the scene with Nixon and Robinson?

A. Yes, Sir, we did."

Also, defendant's alibi witness, James R. Walker, was asked by the State if he knew Dwayne Nixon and was permitted, over defendant's objection, to testify as follows:

"Q. By the way, do you know a man by the name of Dwayne Nixon?

MR. POLIKOFF: Objection, beyond the scope.

THE COURT: Overruled. He may answer.

THE WITNESS: I don't know Dwayne Nixon. You showed me a picture yesterday, and I told you that I have seen that fellow one time.

BY MR. QUINN:

Q. Let me now show you the same picture.

A. I've seen him one time.

Q. Was that on April 13th of '82, last Wednesday, when you came to Court?

A. (No audible response).

Q. He was out in the hallway here.

A. Is this the man?

Q. Did you see him at the garage?

MR. POLIKOFF: Your Honor, I'm going to object and move that the questions and the responses be stricken as beyond the scope of direct exam.

THE COURT: Overruled."

The picture of Dwayne Nixon was sent to the jury at the close of the trial and was referred to in the State's closing argument as follows:

"And after talking to Mr. Pettis on the phone, those police officers went and picked up the Defendant and picked up Dwayne Nixon. And they brought him over to Clara Turner's house.

At that time Mr. Pettis was there. And as he stood in the living room, at the front window, the Defendant was brought out of the car.

* * *

They brought out the second suspect, Dwayne Nixon. Mr. Pettis looked at him, said, 'Yes, indeed; that's the other guy.'

MR. POLIKOFF: Objection.

THE COURT: Overruled. We will rely on the jury's recollection of what the evidence was. Any statement by Counsel that was not in evidence, the jury should disregard.

MR. JISCHKE: Mr. Pettis testified that he identified Dwayne Nixon as the other man who had broken into the house, but so did police officer Angarone, and so did Clara Turner. They all testified as to what Mr. Pettis said as to when he saw Dwayne Nixon."

Although it is firmly settled that a defendant who is separately tried is entitled to have his guilt or innocence determined upon the evidence against him without being judged on evidence of the acts and conduct of someone else (*People v. Sullivan* (1978), 72 Ill. 2d 36, 377 N.E.2d 17), we believe the testimony concerning Dwayne Nixon's participation in the burglary was properly admitted. Defendant and Nixon were seen by State witness Pettis walking away together from the burglarized house, both carrying objects. The men fled after Pet-

tis saw them. Both men were identified by Pettis at the same time shortly after the burglary. Among the items taken in the burglary were several burgundy-colored coats, a television, an Atari, and 10 jars of chemical hair relaxer. The burglary victim, a beautician, testified that nine days earlier Nixon, who other testimony established had straight hair, visited her home to ask about his hair. Nixon was present when the victim gave her sister two coats from a closet. He was also in the basement where the television and Atari were located. All of these circumstances tended to make it more probable that the defendant had committed this crime in concert with Nixon, and therefore the trial court properly admitted this evidence. *People v. Allen* (1959), 17 Ill. 2d 55, 160 N.E.2d 818; see *People v. Asey* (1967), 85 Ill. App. 2d 210, 229 N.E.2d 368.

Further, although an accomplice's confession or admissions may not be admissible as evidence of another's guilt (*People v. Sullivan* (1978), 72 Ill. 2d 36, 377 N.E.2d 17), evidence concerning an accomplice's participation in a burglary may be admissible even when the accomplice is not on trial where it is used for relevant purposes other than guilt (*People v. Allen* (1959), 17 Ill. 2d 55, 160 N.E.2d 818).

Defendant urges that we apply the general rule that it is error to admit into evidence the conviction of a co-indictee, co-conspirator, or accomplice who was separately tried or pleaded guilty, citing as his authority *People v. Burch* (1974), 22 Ill. App. 3d 950, 317 N.E.2d 139. But his reliance on that case is misplaced because the *Burch* court held the rule had little application to that case since the reference to the codefendant was invited.

■ Defendant next contends that the trial court erred when it read two instructions to the jury which the court previously refused during the instruction conference. During the instruction conference the State offered two jury instructions which were modified versions of Illinois Pattern Jury Instruction, Criminal, No. 13.21 (2d ed. 1981). The assistant State's Attorney explained, "Judge, as to 13.21, there are two versions, one with the fourth paragraph, referring to the Defendant's failure to explain his possession of the [stolen] property. The other without it, the I.P.I. indicates the Defendant has the option on that. So, I gave them both." The two instructions tendered by the assistant State's Attorney were numbered 10 and 11. Number 10 read as follows:

"If you find beyond a reasonable doubt that the defendant had exclusive possession of recently stolen property, and that there was no reasonable explanation of his possession, you may infer that the defendant obtained possession of the property by

residential burglary.

You never are required to make this inference. It is for the jury to determine whether the inference should be drawn.

In considering whether exclusive possession of recently stolen property has been reasonably explained, you are reminded that, in the exercise of constitutional rights, the accused need not take the stand nor produce evidence."

The State's instruction number 11 was as follows:

"If you find beyond a reasonable doubt that the defendant had exclusive possession of recently stolen property, and that there was no reasonable explanation of his possession, you may infer that the defendant obtained possession of the property by residential burglary.

You never are required to make this inference. It is for the jury to determine whether the inference should be drawn.

Exclusive possession of recently stolen property may be reasonably explained by the facts and circumstances in evidence."

The defendant objected to the State's instructions 10 and 11, and the trial court ruled that the instructions would not be given and wrote on them "not given." The record indicates that the trial judge wrote "given" on each instruction that was to be given and "not given" on each instruction that was not to be given.

The record on appeal as originally filed purported to show that the trial judge read the State's instructions 10 and 11 to the jury although the court had previously ruled they would not be given. This record was certified by the clerk of the circuit court and by eight official court reporters, including Barbara J. Wright, who was the court reporter on April 20, 1983, the day the trial court instructed the jury. Defendant contends that the trial court's "inadvertent submission" of these two instructions to the jury denied him a fair trial, because the instructions injected into the case the highly prejudicial matter of a defendant's failure to explain his possession of recently stolen property, not otherwise an issue before the jury.

Defendant also contends that by instructions 10 and 11 the jury was erroneously twice told that it could find him guilty of residential burglary if he did not present any reasonable explanation for his possession of the stolen property. He relies upon *People v. Housby* (1981), 84 Ill. 2d 415, 423, 420 N.E.2d 151, 155, in which it was stated:

"To the extent that past Illinois decisions have held that exclusive and unexplained possession of recently stolen property is sufficient, standing alone and without corroborating evidence of guilt, for conviction of burglary, those decisions *** can no

longer be applied, even when the inference is regarded as permissive. The presumption standing alone does not prove burglary beyond a reasonable doubt. The person in exclusive possession may be the burglar, to be sure, but he might also be a receiver of stolen property, guilty of theft but not burglary, an innocent purchaser without knowledge that the item is stolen, or even an innocent victim of circumstances."

Defendant also asserts that an erroneous instruction on an essential element of the crime constitutes grave error requiring reversal, without regard to the nature of the evidence against him. However, we regard all these arguments as unavailing because eight months after the defendant had filed his brief on appeal, on July 30, 1984, a hearing was held in the trial court on the State's motion to correct the trial record. The State contended that the two instructions at issue were inadvertently and erroneously included in the record on appeal as having been read to the jury by the trial judge.

At the hearing on the State's motion to correct the record on appeal, the State examined Barbara J. Wright, who was the official court reporter on April 20, 1983, the day the court instructed the jury. Wright was asked whether State's instructions 10 and 11 appeared in her notes as having been read by the trial judge to the jury that day. Wright reads into the record her stenographic notes of the instructions given. She testified that those notes did not include the instructions at issue here, thus indicating they had not been read to the jury. The court reporter also testified that the faulty instructions were erroneously included in the original transcript because she copied them from a set of instructions given to her by an assistant State's Attorney. The trial court noted that in the common law record the two instructions bore the notation, in the judge's handwriting, that they had been objected to by the defendant and had not been given. Based on all this evidence, the court found that the instructions had not been given. The State then filed a supplemental record including these proceedings.

With respect to that supplemental record, Supreme Court Rule 329 (87 Ill. 2d R. 329) reads in part:

"The record on appeal shall be taken as true and correct unless shown to be otherwise and corrected in a manner permitted by this rule. Material omissions or inaccuracies or improper authentication may be corrected by stipulation of the parties or by the trial court ***. Any controversy as to whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by that court and the record made

to conform to the truth."

This rule represents a comprehensive liberalization of the procedure for disputing and correcting the record. (*Ray v. Winter* (1977), 67 Ill. 2d 296, 367 N.E.2d 678; Ill. Ann. Stat., ch. 110A, par. 329, Historical and Practice Notes, at 446-47 (Smith-Hurd 1985).) Thus, in *People v. Chitwood* (1977), 67 Ill. 2d 443, 367 N.E.2d 1131, our supreme court approved a correction of the record based on an affidavit and the trial judge's verification of the accuracy of the affidavit. The appellate court had rejected this procedure based on its belief that in *Hartgraves v. Don Cartage Co.* (1976), 63 Ill. 2d 425, 348 N.E.2d 457, the supreme court had engrafted onto Rule 29 a limitation that correction could not be based on the mere recollection of a witness or the trial judge. (*People v. Chitwood* (1976), 42 Ill. App. 3d 680, 684, 356 N.E.2d 592, 596.) On review our supreme court rejected this construction, stating:

> "[Rule 392] may not be employed as a self-frustrating device, namely to change what a court on a hearing under this rule with uncontradicted affidavits, has determined to be an accurate representation of what occurred." *People v. Chitwood* (1977), 67 Ill. 2d 443, 447, 367 N.E.2d 1331, 1333.

In *People v. Allen* (1985), 109 Ill. 2d 177, 486 N.E.2d 873, a case involving strikingly similar facts, our supreme court found that an inaccurate record was properly corrected by the trial court. There the original transcript indicated that an instruction containing faulty language was read to the jury. However, at a Rule 329 hearing the court reporter read into the record her stenographic notes, which did not reflect this error. She, too, testified that she had relied on a set of instructions given her by the State's Attorney's office. It was also established that the common law record contained a correct version of the instructions, marked "given" by the trial judge. Based on all of this evidence, the supreme court found that the record had properly been corrected pursuant to Rule 329. In affirming the propriety of the filing of a supplemental record based on the reporter's notes concerning the instruction, the court said:

> "It is well established that a party may not prove an inaccuracy in the record merely by presenting oral testimony. [Citations.] Rather, the inaccuracy must 'be proved by the production of some note, memorandum from the records or quasi-records of the court, or by the judge's minutes, or by the papers on file in the cause.' [Citations.]" 109 Ill. 2d 177, 184, 486 N.E.2d 873, 875.

In this case, in addition to the court reporter's testimony that her

notes did not indicate the instructions had been read, the judge's written notes on the instructions indicated the disputed instructions were refused. The testimony of the reporter, plus the judge's notes of refusal of the instruction, satisfy the requirement now set out in *People v. Allen* (1985), 109 Ill. 2d 177, 486 N.E.2d 873.

■ We need not address defendant's final contention that the assistant State's Attorney improperly stated in closing rebuttal argument that defendant's alibi witness did not produce a receipt which showed that the defendant fixed his car on the day of the incident. The record shows that defendant did not object to this alleged error and did not raise the alleged error in his post-trial motion. *People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227.

For these reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

MURRAY, J.,* concurs.

JUSTICE PINCHAM, dissenting.

I dissent. I agree that the competent evidence, which the jury apparently believed, established Steve Robinson's guilt beyond a reasonable doubt. Inadmissible incompetent evidence, however, was also introduced against the defendant about which I voice my disapproval even though I do not think it affected the jury's verdict. Its admission was harmless error beyond a reasonable doubt. *People v. Curtis* (1986), 113 Ill. 2d 136, 151-53, 497 N.E.2d 1004.

A defendant who is separately tried is entitled to have his guilt or innocence determined from evidence of what he did, and he should not be judged on evidence of the acts and conduct of someone else. (*People v. Sullivan* (1978), 72 Ill. 2d 36, 42, 377 N.E.2d 17.) Of course the evidence that the defendant Robinson was seen with the codefendant Nixon walking away from the burglarized premises carrying objects and that they fled after being seen by Pettis was admissible against Robinson. Evidence that Pettis shortly thereafter identified Robinson and Nixon was likewise admissible against Robinson. Certainly evidence of what was stolen in the burglary was competent evidence against Robinson. But the evidence that Nixon planned to steal

---

*Justice Mejda heard the oral argument in this case and following his retirement Justice Murray was substituted, listened to the tapes of the oral argument and read the briefs and record.

the victim's Atari, coats, television, and hair relaxer was incompetent and inadmissible against Robinson. The victim's testimony that nine days before the burglary Nixon visited her home and asked her for advice about his hair and Officer Angarone's testimony that Nixon had straightened hair in his picture was not competent or admissible evidence against Robinson. Evidence that Nixon was present when the burglary victim gave his sister two coats from a closet did not tend to prove Robinson's participation in the burglary and was also incompetent and inadmissible against Robinson.

The record is devoid of any explanation for the trial court's admission of the foregoing evidence concerning Nixon as evidence against Robinson, and yet the trial court refused to allow Robinson to present evidence that Nixon had been previously found guilty of misdemeanor theft arising out of his involvement in that transaction.

The majority misconstrues this issue. Of course acts of the codefendant, Dwayne Nixon, which established the commission of the burglary or Robinson's participation therein were admissible against Robinson during his trial. But evidence regarding Dwayne Nixon was inadmissible because it did not establish Robinson's commission of the burglary or Robinson's involvement in the burglary. The admission of this evidence was erroneous, though harmless. Considering the other evidence against Robinson, it is clear beyond a reasonable doubt that Robinson would have been convicted even if the incompetent evidence had not been admitted. *People v. Curtis* (1986), 113 Ill. 2d 136, 153, 497 N.E.2d 1004.

I agree with the defendant's contention that the trial court erred when it inadvertently read refused instructions 10 and 11 to the jury. I find the court reporter's explanation presented at the hearing of the State's motion to correct the record on appeal to be implausible and unacceptable.

The defendant objected to State's instructions 10 and 11 and the trial court ruled that the instructions would not be given and wrote on them "not given." The record indicates that the trial judge wrote "given" on each instruction that was to be given and "not given" on each instruction that was not to be given.

The defendant filed the record on appeal. This record reveals that the trial judge read the State's refused instructions 10 and 11 to the jury although the court had previously ruled they would not be given. This record was certified by the clerk of the circuit court as follows:

"I, MORGAN M. FINLEY, CLERK of the Circuit Court of Cook County, Illinois and the keeper of the records, files and Seal do hereby certify the above and foregoing to be a true,

perfect and complete copy of a one volume record consisting of volume one (1) of one (1) of the Report of Proceedings and the Common Law Record, no designation of record having been filed pursuant to the Notice of Appeal filed herein: Illinois Appellate Court No. 83—1180 in a certain cause lately pending in said Court, on the criminal side thereof, wherein the PEOPLE OF THE STATE OF ILLINOIS are Plaintiff and Steve L. Robinson, Impleaded is Defendant."

The appeal record was also certified by eight official court reporters, including Barbara J. Wright, who was the court reporter on April 20, 1983, the day the trial court instructed the jury. The certification signed by Barbara J. Wright and the other court reporters was as follows:

"We, the undersigned, Official Court Reporters of the Circuit Court of Cook County, County Department, Criminal Division, do hereby certify that we reported in shorthand the proceedings had upon the trial in the above entitled cause; that we thereafter caused to be transcribed into typewriting the above transcript, which we hereby certify is a true and correct transcript of the proceedings had before the Hon. Thomas J. Maloney."

Based on the certified record of the trial proceedings as the record on appeal, the defendant filed his brief in this court on December 5, 1983. The first issue presented was that the trial court's "inadvertent submission of two instructions to the jury, which the court had properly refused, denied defendant a fair trial, when the refused instructions injected into the case the highly prejudicial matter of a defendant's failure to explain his possession of recently stolen property, not otherwise an issue before the jury."

On July 30, 1984, nearly eight months after the defendant had filed his brief on appeal, a hearing was held in the trial court on the State's motion to correct the trial record. The State asked the court to delete State's instructions 10 and 11 from the record, as though they had not been given. The State contended that they were erroneously included in the record as having been read to the jury by the trial judge. The State urged that State's refused instructions 10 and 11 had not been read to the jury.

At the hearing on the State's motion to correct the record, the State examined Barbara J. Wright, who was the official court reporter on April 20, 1983, the day the court instructed the jury. Wright was asked whether State's instructions 10 and 11 appeared in her notes as having been read by the trial judge to the jury that day.

Wright said that they did not. She offered no explanation, however, for the fact that according to her certification she transcribed the trial proceedings for that day from her stenographic notes which included instructions 10 and 11 as having been read to the jury. Wright testified that she had no independent recollection of what specific jury instructions the trial judge read and stated that she included and certified in the record the State's refused instructions 10 and 11 because they were given to her by the assistant State's Attorney before the trial judge read the instructions to the jury. No explanation was presented as to why the assistant State's Attorney gave her these two refused State's instructions before the trial judge read them to the jury. Nor was any explanation offered for her including them in the record as having been read by the judge to the jury other than they were read to the jury by the trial judge and she stenographically recorded them as the trial judge read them.

The trial court granted the State's motion to correct the record and ruled:

"[T]he original instruction would have been · taken from the original group and the copies would have been marked. And within an hour or two from the time of the—of the instructions, the instructions would have been read to the jury. And so, quite obviously, the court would not have read the instructions.

\* \* \*

Well, I have so found and do so find they were not given. Quite obviously, *the court['s] usual procedure was followed.* There's every evidence of that. According to the transcript, [the] court['s] own statements, court notes and whatever mistake the court reporter made, including them; I don't understand, but the instructions were not given." (Emphasis added.)

The State filed a supplemental record on August 1, 1984. This supplemental record was certified by a court reporter and reflects that instructions 10 and 11 were not read to the jury by the trial judge. Thus, before this court there are two conflicting records on appeal, one of certified court reporter Barbara J. Wright, that instructions 10 and 11 were read by the trial court to the jury and the other certified record which shows that they were not.

The trial judge acknowledged that "I do not understand" how the court reporter could have made an error in transcribing the original transcript. For the error to be attributed to the court reporter one has to believe that she inadvertently added language from her notes that was never spoken by the trial judge. As the trial judge recognized, it is difficult "to understand" how a court reporter could mis-

takenly add language, as opposed to mistakenly omit language, especially since the court reporter testified that she reported what the trial judge said "as he said it to the jury" and that she had been listening. She certified as "true and correct" the original record on appeal which included instructions 10 and 11. If her notes were unreliable when she prepared the original record on appeal, I see no reason to believe that her notes were more reliable nearly a year later at the hearing on the State's motion to correct the record. (*Fox v. Department of Revenue* (1966), 34 Ill. 2d 358, 215 N.E.2d 217 (amendment made four months after an order was held void).) As stated in *Hartgraves v. Don Cartage Co.* (1976), 63 Ill. 2d 425, 428, 348 N.E.2d 457:

> "Generally, 'an amendment of the record cannot be made by oral testimony, or from the recollection of the trial judge himself, but must be proved by the production of some note or memorandum from the record or *quasi* records of the court, or by the judge's minutes, or by the papers on file in the cause.' [Citations.] '[A]n amendment of a record cannot be made either from the memory of a witness, from the recollection of the judge himself, or by affidavit, but the record must show the basis upon which the amendment of correction is made.' [Citations.]
>
> Here it is uncontroverted that no documents, minutes, records, or quasi-records existed, and that the judge relied solely on his 'clear memory' in making the 'correction' of the record."

The testimony of the court reporter in the instant case about her conflicting transcripts of the trial court's instructions to the jury and the trial judge's reliance on the "usual procedure" do not convincingly refute the main record and the certification thereof that instructions 10 and 11 were inadvertently given to the jury. This error demands reversal.

It is reversible error to inject into a case, by way of instruction, issues which are not properly before the jury. (*People v. McCauley* (1972), 2 Ill. App. 3d 734, 736, 277 N.E.2d 541.) By reading instructions 10 and 11, the jury in this case was erroneously twice told that it could find the defendant guilty of residential burglary if the defendant did not present a reasonable explanation for his possession of the stolen property. The supreme court stated in *People v. Housby* (1981), 84 Ill. 2d 415, 423, 420 N.E.2d 515, *cert. denied* (1981), 454 U.S. 845, 70 L. Ed. 2d 131, 102 S. Ct. 160:

> "To the extent that past Illinois decisions have held that exclusive and unexplained possession of recently stolen property is sufficient, standing alone and without corroborating evidence

of guilt, for conviction of burglary, those decisions \*\*\* can no longer be applied, even when the inference is regarded as permissive. The presumption standing alone does not prove burglary beyond a reasonable doubt. The person in exclusive possession may be the burglar, to be sure, but he might also be a receiver of stolen property, guilty of theft but not burglary, an innocent purchaser without knowledge that the item is stolen, or even an innocent victim of circumstances."

The majority's reliance on *People v. Chitwood* (1977), 67 Ill. 2d 443, 367 N.E.2d 1331, is misplaced. In *Chitwood*, the appellate court reversed the defendant's reckless-driving conviction on the ground that the record on appeal did not show that defendant had waived his right to a jury. Subsequent to the defendant's appeal the State filed a motion in the appellate court to amend the record. The motion was based on an affidavit, apparently of an assistant State's Attorney, which was filed in the trial court. The affidavit stated that defendant's counsel, in the presence of the defendant, informed the trial judge that defendant desired to waive a trial by jury. A hearing was held on the affidavit by the trial court. In the trial court, the defendant did not challenge or deny the accuracy of the affidavit, nor did he do so before the appellate or supreme courts. The appellate court denied the State's motion to amend the record and allowed its judgment reversing the conviction to stand.

The supreme court pointed out that the transcript of the arraignment proceedings revealed that the defendant was informed of his right to a jury trial and that the defendant did not object to a bench trial which was held a week later. The court further pointed out that it was the State's position on appeal that the defendant, through his counsel, waived a jury trial in open court but that the waiver was inadvertently omitted from the record on appeal and that the defendant did not deny having waived a jury. The supreme court held that under these circumstances, where there was no contradiction of the facts, the State's motion to amend the record should have been allowed. The court reversed the judgment of the appellate court.

In the case before us, the court reporter's certification of the record swears that she transcribed the record which included instructions 10 and 11, from her notes. This sworn certification contradicts her testimony that the two refused instructions were not included in her notes. If her testimony is believed, then she transcribed instructions 10 and 11 into the record from her notes which did not exist, *i.e.*, which did not contain those instructions. This is implausible and unacceptable.

The majority's reliance on *People v. Allen* (1985), 109 Ill. 2d 177, 486 N.E.2d 873, is also misplaced. *Allen* involved an evidentiary hearing pursuant to Supreme Court Rule 329 to correct an erroneous instruction which was included in the record on appeal. At that hearing the court reporter testified that as the trial judge read the jury instructions to the jury, she recorded the proceedings by means of stenographic notes. The court reporter testified further that her stenographic notes of the judge's reading of the instructions, which were in controversy, did not contain certain language which would have caused the instruction to be improper. She explained that as she transcribed her notes she noticed a discrepancy between her stenographic notes of an instruction and that instruction given her by the assistant State's Attorney. The court reporter testified that when she noticed the discrepancy she assumed that she had missed something the trial judge had said in instructing the jury and that she added that which was contained in the written instruction given her by the assistant State's Attorney. It was this additional language in the instruction of which complaint was made and which the State contended was not read to the jury by the trial judge. Again, it is to be noted that the court reporter's stenographic notes of the trial judge's reading of the instruction did not contain this additional objectionable language. The trial judge concluded that the court reporter's stenographic notes were correct and that her explanation for the inclusion of the improper additional language in the instruction was plausible and ordered the record to be corrected by striking the improper language from the instruction.

The case at bar is not analogous. The case at bar does not involve deleting erroneous language from an instruction to conform it to the court reporter's original stenographic notes. In the case at bar the court reporter certified in the record that she transcribed the refused instructions 10 and 11 from her stenographic notes which were taken as the trial judge read the instructions to the jury. At the hearing of the motion to correct the record, she conversely testified that her stenographic notes of the judge's reading of the instructions to the jury did not contain the judge's reading of instructions 10 and 11 to the jury. Her explanation for having included instructions 10 and 11 as part of the trial court's charge to the jury was that she was given these two refused instructions by the assistant State's Attorney. If the court reporter stenographically recorded the trial judge's reading of the instructions as the judge read them, as she testified she did and as her notes originally reflected she did, then there is no plausible explanation for her including refused instructions 10 and 11 in the

record as having been read by the judge in his charge to the jury, except the judge in fact read them to the jury.

The case at bar does not involve the correction of an erroneous instruction occasioned, as in *Allen*, by mistaken stenographic notes. Rather, the instant case involves the original inclusion of two refused instructions and thereafter the exclusion of the two refused instructions from the reporter's stenographic notes. The case at bar involved stenographic notes which were sworn to have existed but which were later sworn never to have existed. In *Allen*, the explanation for the erroneous addition to the instruction was plausible and acceptable. In the case at bar, the explanation for the inclusion and subsequent exclusion of instructions 10 and 11 was implausible and unacceptable.

The authenticity and integrity of a record on appeal demands far more than that which was shown in this case. Based on the original record on appeal and the subsequent proceedings in the trial court to correct the record on appeal, no convincing or persuasive conclusion can be reached that refused instructions 10 and 11 were not read to the jury by the trial judge. I therefore dissent. I would reverse the judgment of conviction and remand the cause for a new trial.