THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WALTER PIETRUSZYNSKI, Defendant-Appellant.

First District (1st Division) No. 1—87—2005

Opinion filed September 5, 1989.—Rehearing denied November 6, 1989.

Michael J. Pelletier and Thomas Long, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, LaCoulton Walls, and Brian Grossman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a bench trial, defendant, Walter Pietruszynski, was convicted of burglary (Ill. Rev. Stat. 1987, ch. 38, par. 19—1) and sentenced to eight years' imprisonment. On appeal, defendant contends that: (1) the State failed to prove him guilty of burglary beyond a reasonable doubt; (2) the State failed to prove that defendant was statutorily eligible to be sentenced as a Class X offender; and (3) the trial court erred in failing to advise defendant of the possibility of probation if he elects to submit to treatment pursuant to Alcoholism and Substance Abuse Act (Ill. Rev. Stat. 1987, ch. 111½, par. 6301 *et seq.*). For the following reasons, we affirm that part of the trial court's order that found defendant guilty of burglary; reverse that part of the order which sentenced defendant as a Class X offender;

and remand the cause for appropriate Class 2 sentencing.

The record sets forth the following facts relevant to this appeal. On January 12, 1986, approximately 3 a.m., Alfred Klingsheim, service investigator for Wells Fargo Alarm Systems, received an alarm from Mrs. Grass, Inc., a manufacturing plant located at 725 S. 25th Avenue in Bellwood. When Klingsheim arrived at the plant, he turned off the alarm, which was coming from the north wall of the plant, and then drove around the plant to see if any doors were open or windows broken. Because there were no visible signs of entry, Klingsheim thought the alarm system had malfunctioned. Klingsheim then entered the building and proceeded to check the various internal doors which were also hooked into the alarm system. He noticed one door had been left unbolted and then heard a noise in the cafeteria that sounded like "steel hitting the cement." When Klingsheim realized there was someone in the cafeteria, he called the police for back up and waited behind a file cabinet in the cafeteria. When the intruder came out, Klingsheim told him to stay where he was. However, the intruder just glanced over his shoulder and ran into the factory area of the plant. Klingsheim described the intruder as a young, white male with black hair, wearing a yellow, waist-length coat, blue trousers and boot-type shoes.

When the intruder ran into the factory area, Klingsheim started to follow him, but stopped because the factory was dark and he did not know his way around there. He noted, however, that the intruder appeared to know his way around the factory. Klingsheim then went toward the front office area, thinking the intruder may have gone that way. At that point, he noticed that the police had arrived. Some of the officers positioned themselves at various places outside the building while two of them accompanied Klingsheim back into the building. Inside, Klingsheim spotted a "piece of metal from the roof inventory" in the manufacturing area and saw a hole in the roof. He also noticed some quarters and a heavy chisel on the floor.

Officer Frank DeGuiseppe of the Bellwood police department testified that approximately 3:30 a.m. on January 12, 1986, he responded to an alarm call at the Mrs. Grass plant. When he arrived at the plant, he exited his car and was standing on the north side of the building when he noticed someone on top of the plant's roof. That person then jumped onto a nearby telephone pole and slid to the ground, landing on his feet approximately five feet from where DeGuiseppe was standing. The person landed with his back toward DeGuiseppe, then turned around and faced him. DeGuiseppe stated that the area was well lit and that he immediately recognized defendant,

whom he had known for over 18 years, and yelled, "Wally *** police!"

Defendant then ran north to his house, located approximately 200 feet away. DeGuiseppe described defendant as wearing a "green type Army jacket," blue jeans and heavy work shoes. DeGuiseppe called for assistance, and when other officers arrived, he stationed himself in front of defendant's three-flat building while other officers went to the back of the building. On cross-examination, DeGuiseppe admitted that he had not mentioned the telephone pole to the grand jury or in his police report.

Officer John Pikrone of the Bellwood police department testified that on January 12, 1986, he was dispatched to Mrs. Grass, Inc., in response to a Wells Fargo guard's request for assistance. When he arrived at the plant, Klingsheim met him and told him that someone was in the building. Pikrone and his partner proceeded to search inside. In the cafeteria, they noticed that several vending machines had been broken and that a trail of change on the floor led into the manufacturing area. In addition, because the floor had some type of flour residue on it, Pikrone observed hiking boot footprints leading into the manufacturing area and ending at a large hopper-type machine which extended to the ceiling. He also observed that the roof vent at the top of the machine was missing.

Pikrone climbed up the machine and outside to the roof. At roof level, he noticed hiking boot footprints in the snow leading from the roof vent to the north side of the building. At that point, Pikrone heard over the police radio that defendant had jumped off the roof. Back on the ground, Pikrone observed hiking boot footprints in the snow leading from the telephone pole to the rear of defendant's three-flat. At the three-flat, Pikrone noticed that the rear entry door to the basement apartment was ajar and there was a light on inside. He then identified himself and pushed open the door. Defendant, wearing a sweater, blue jeans and hiking boots, was standing inside.

Defendant's mother, Antoinette Pietruszynski, testified that on January 12, 1986, approximately 3:30 a.m., she was putting food away in the first-floor apartment after a family get-together in the basement apartment when she heard a dog barking. She called to defendant, who was in the basement apartment, and asked him to bring the dog inside. Shortly after the defendant went outside to get the dog, Antoinette heard some commotion in the basement. When she went out to the back porch, she saw some police officers taking defendant out of the basement apartment and into a squad car. Defendant was wearing blue jeans, a "dago-t" and loafers. Antoinette

further stated that there were no outside lights at the Mrs. Grass plant and no streetlights on that side of the street. On redirect, Antoinette stated that when the police took defendant away, he was in his stocking feet and had no shoes.

Defendant testified that on January 12, 1986, approximately 3:30 a.m., he heard his mother's dog barking and went outside to check out the situation. He then noticed a Bellwood police car pulling up behind his three-flat. An officer got out and was walking toward defendant. At that point, defendant noticed that another squad car had pulled up in front of his building and an officer was walking down the gangway toward him. Defendant kept asking the officers what was going on, but neither one would say anything. Suddenly, one of the officers swerved defendant around, kicked him in the back and hit him with a gun in the back of the head. They then handcuffed him and took him to the squad car in front of the house. Defendant stated that he was wearing blue jeans, a "white athletic shirt, and house slippers," and that he had worked at the Mrs. Grass plant for a few months in 1978. On cross-examination, defendant admitted that he knew Officer DeGuiseppe, but denied seeing him on the night of the occurrence.

Thereafter, the trial court found defendant guilty of burglary. At the sentencing hearing, the State argued that defendant's two prior Class 2 convictions made him eligible for sentencing as a Class X offender. The trial court agreed and sentenced defendant to eight years in prison. Defendant's timely appeal followed.

Initially, defendant contends that the State failed to prove him guilty of burglary beyond a reasonable doubt because the State's case was based solely on the doubtful identification and questionable testimony of Officer DeGuiseppe. In response, the State argues that it had presented overwhelming evidence of defendant's guilt.

■■ ■ When the identification of an accused is at issue, the testimony of one witness is sufficient to convict even though that testimony is contradicted by the accused, provided that the witness is credible and that he viewed the accused under circumstances that would permit a positive identification to be made. (*People v. Ash* (1984), 102 Ill. 2d 485, 468 N.E.2d 1153; *People v. Robinson* (1987), 153 Ill. App. 3d 272, 505 N.E.2d 1144.) The credibility and certainty of a witness' identification are enhanced when the witness testifies that he had known the defendant prior to the occurrence. (*People v. Robinson* (1987), 153 Ill. App. 3d 272, 505 N.E.2d 1144.) A reviewing court will not substitute its judgment for that of the trier of fact on questions involving either the weight of the evidence or the credibility

of the witnesses (*People v. Dunklin* (1982), 104 Ill. App. 3d 685, 432 N.E.2d 1323), and will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt as to defendant's guilt. *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.

In the present case, Officer DeGuiseppe testified that on January 12, 1986, approximately 3:30 a.m., he responded to an alarm call at the Mrs. Grass plant. When he arrived at the building, which was approximately two blocks long and 1½ stories high, he exited his squad car and stood on the north side of the building. After approximately five minutes, DeGuiseppe saw a man jump from the top of the building's roof onto a telephone pole and slide down the pole, using the little steps for his hands. The man landed on his feet with his back toward DeGuiseppe, who was standing approximately five feet away. When the man turned around, DeGuiseppe recognized him immediately as defendant and called out defendant's first name and identified himself as the police. Defendant then ran toward his house, located a couple hundred feet away. At the time, defendant was wearing a "green-type Army jacket," blue jeans and heavy work shoes. DeGuiseppe called for assistance and then remained in front of defendant's building. The other officers went to the back.

On cross-examination, Officer DeGuiseppe admitted that he had not mentioned in his police report or at the grand jury hearing that defendant had used a telephone pole to get from the factory roof to the ground. On redirect, Officer DeGuiseppe stated that he had known defendant for approximately 18 years and had seen him numerous times.

■ Defendant attempts to undermine Officer DeGuiseppe's testimony by stating that because he landed with his back toward DeGuiseppe, then turned around, looked at DeGuiseppe, who was only five feet away, and then fled, there was very little time for DeGuiseppe to have viewed him. In light of the fact that DeGuiseppe has known defendant for over 18 years and recognized him immediately, this argument is unpersuasive. In addition, defendant claims that the discrepancy between DeGuiseppe's testimony and defendant's mother's testimony as to how well lit the area was renders DeGuiseppe's identification unreliable. As stated, credibility of the witnesses is a decision for the trier of fact. (*People v. Ash* (1984), 102 Ill. 2d 485, 468 N.E.2d 1153.) In our view, the fact that DeGuiseppe could not state exactly how far away the streetlights were does not undermine the fact that the area was lit well enough for him to immediately recognize defendant.

■ Defendant further argues that beyond DeGuiseppe's identifica-

tion of defendant, the State presented no evidence that implicated defendant. As previously stated, DeGuiseppe's unequivocal identification of defendant is sufficient to convict defendant. (*People v. Ash* (1984), 102 Ill. 2d 485, 468 N.E.2d 1153.) However, even if it were not, the State presented ample evidence to bolster DeGuiseppe's testimony. Officer John Pikrone testified that when he and his partner responded to the Wells Fargo guard's request for assistance, they entered the building and, while in the cafeteria, noticed that several vending machines had been tampered with and there were coins on the floor leading into the factory area. In addition, the floor had a flour-type residue on it, which showed footprints leading into the factory area. The footprints ended at a large hopper-type machine which extended to the ceiling. The roof vent over the machine was missing. Pikrone then climbed up the machine and out onto the roof, where he saw the same footprints in the snow leading from the vent to the north side of the building. At that point, he heard DeGuiseppe say over the police radio that defendant had jumped off the roof. Pikrone climbed back down the machine and went outside, where he saw the same footprints leading from the telephone pole on the north side of the building to the rear door of defendant's three-flat building, approximately 200 feet away. At defendant's building, the basement door was slightly ajar and there was a light on inside. Pikrone identified himself and pushed open the door. Defendant was standing inside.

In addition, Alfred Klingsheim, service man/investigator for Wells Fargo, testified that when he arrived at the Mrs. Grass plant approximately 3 a.m. on January 12, 1986, he heard noise in the cafeteria that sounded like steel hitting cement and saw a young, white male with black hair, wearing a yellow, waist-length jacket, blue trousers and hiking boots, run from the cafeteria into the factory area. Klingsheim did not follow him because he was not familiar with the inside of the factory.

Aside from the discrepancy as to what defendant was wearing, we find that the testimony of Klingsheim, Pikrone and DeGuiseppe clearly implicates defendant in the burglary at the Mrs. Grass plant. Defendant virtually left a trail of coins and footprints which led from the cafeteria, through his escape route out of the factory, directly to the door of his basement apartment. Any discrepancy as to clothing is left to the trier of fact to assess. *People v. Ash* (1984), 102 Ill. 2d 485, 468 N.E.2d 1153.

■ Defendant also attempts to instill reasonable doubt by arguing that despite ample opportunity, the State failed to present any physical evidence corroborating DeGuiseppe's testimony. Specifically, defendant

refers to his jacket, boots, any coins allegedly taken from the vending machines, or any fingerprints on the vending machines. We find this argument unpersuasive. Proof that specifically identifiable property was taken from the burglarized premises is not an essential element of burglary and is unnecessary to support a conviction (*People v. Panus* (1979), 76 Ill. 2d 263, 391 N.E.2d 376), especially when defendant has been positively identified. (*People v. Ash* (1984), 102 Ill. 2d 485, 468 N.E.2d 1153.) Accordingly, we conclude that defendant was convicted of burglary beyond a reasonable doubt.

Next, defendant contends that the State failed to prove beyond a reasonable doubt that he had committed and had been convicted of two Class 1 or Class 2 felonies since February 1, 1978, thereby making him eligible for sentencing as a Class X offender pursuant to section 5—5—3(c)(8) of the Unified Code of Corrections (Class X sentencing provision) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3(c)(8)), which provides:

> "(8) When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted of any Class 2 or greater Class felonies in Illinois, and such charges are separately brought and tried and arise out of different series of acts, such defendant shall be sentenced as a Class X offender. This paragraph shall not apply unless (1) the first felony was committed after the effective date of this amendatory Act of 1977 [February 1, 1978]; and (2) the second felony was committed after conviction on the first; and (3) the third felony was committed after conviction on the second."

Defendant contends that the State failed to prove beyond a reasonable doubt that he had been convicted of two prior Class 1 or Class 2 felonies that had been committed after February 1, 1978. In response, the State argues that defendant has waived this issue for review as a result of his failure to object to imposition of the Class X sentencing provision at the sentencing hearing and as a result of defense counsel's admission at that time that the Class X sentencing provision was applicable.

Where a statute provides for imposition of an enhanced sentence upon proof of a prior conviction, the burden is on the State to prove the prior conviction beyond a reasonable doubt. (*People v. Langdon* (1979), 73 Ill. App. 3d 881, 392 N.E.2d 142.) Proof of such prior convictions is generally provided by introduction of certified copies of the convictions and identification of defendant as the one convicted. (*People v. Harris* (1987), 157 Ill. App. 3d 70, 510 N.E.2d 107.) However, with respect to the Class X sentencing provision, even where the State has introduced certified copies indicating the dates of defend-

ant's prior arrests and convictions and defense counsel has stipulated to that evidence, if the State fails to present evidence as to when the offenses were committed, sentencing as a Class X offender is improper. (*People v. Parks* (1988), 168 Ill. App. 3d 978, 523 N.E.2d 130.) The date that the offenses were committed, not just the fact that the offenses were committed, is a prerequisite to the Class X sentencing provision. Therefore, the State's burden of proof includes proof beyond a reasonable doubt of the date the offense was committed.

In the present case, the only evidence introduced to the trial court regarding defendant's prior convictions was a presentence report which contained no evidence of the dates on which prior offenses had been committed. At the sentencing hearing, the following dialogue took place regarding evidence of the prior offenses:

"[STATE]: Judge, we do have a copy of the Presentence Report, and the defendant was convicted of forgery [Class 3 offense] in 1985 and given three years in the penitentiary. From my State sheet, Judge, I am ready [*sic*] from a State sheet.

THE COURT: He was given what?

[STATE]: Two years in the penitentiary. That was a Maywood case, so it is on the State sheet.

Then in 1982 he had two misdemeanor shoplifting convictions. In 1983 he was convicted of attempt burglary. It reads burglary on my State sheet. It would have to have been attempt burglary because he received thirty months sentence, and that would not be a minimum sentence on the burglary.

So that would be attempt burglary [Class 3 offense].

In 1980 he was given three years in the penitentiary on attempt burglary.

Then in 1982 he was given three years on attempt burglary [Class 3 offense].

In 1980 he was given three years on a burglary [Class 2 offense] sentence.

In fact, there were two burglaries, two burglary sentences, two different cases, so he had convictions for two burglaries in 1980. He was sentenced at the same time, June 13th, 1980.

At one time I was under the impression, well, I would have to check the Statute because he has a second burglary conviction, if he has been convicted of burglary twice after the Statute then this would be a Class X, Judge. I will have to check to see if the '78 conviction for burglary, where he was given four years probation does put him into that category.

I was under the impression that the attempt burglary, which

was listed as burglary, would have put him into that category.

First felony has to be committed after the effective date of the Act, '77.

Judge, he would qualify. This would make this case a Class X felony that he, therefore, could be sentenced from six to thirty years under this case.

The State would be recommending substantial penitentiary sentences based on the background, your Honor.

[DEFENSE]: Judge, my only point with respect to the Class X sentencing, I note from the Presentence Report, as well as the State report that there is a date of February of '78. I am not sure if that is the arrest date or conviction date, and if that is the conviction date then it is quite possible that burglary conviction would have arose in '77, which would then take it out of subparagraph One that Counsel is referring to.

[STATE]: The arrest in that case was February 19th, 1978.

[DEFENSE]: Okay.

THE COURT: He is a Class X offender.

[STATE]: Right.

That would make him, Judge, the arrest was after, it was in 1978, so that would make it a Class X reading from the Illinois sheet.

THE COURT: Anything further, [Defense]?

[DEFENSE]: Judge, I would just point out, although it does appear that that case was a '78 arrest, I would point out that is a few months past the effective date of the Act of 1977. So it puts it into the Class X Provision."

As the preceding indicates, there was no evidence introduced as to when the 1978 burglary had been committed. The fact that defendant had been arrested on February 19, 1978, for the burglary is not proof that the burglary had been committed after February 1, 1978, which is a prerequisite to the application of the Class X sentencing provision. Evidence as to when the offense was committed is necessary even if defense counsel has stipulated to the arrests and convictions. (*People v. Parks* (1988), 168 Ill. App. 3d 978, 523 N.E.2d 130.) Consequently, we conclude that the State failed to meet its burden of proof and that the trial court erred in sentencing defendant as a Class X offender.

■■ In reaching this conclusion, we find the State's argument that defendant has waived this issue for review by never objecting to the State's lack of evidence unpersuasive. The State cannot circumvent its burden of proof as set forth in the statutory requirements of the Class X sentencing provision by claiming waiver. Moreover, even if

waiver were an appropriate argument in this case, this court would elect to address the issue under the plain error doctrine (*People v. Smith* (1985), 106 Ill. 2d 327, 478 N.E.2d 357) and would reach the same conclusion.

Furthermore, we find the State's reliance on *People v. Rice* (1985), 137 Ill. App. 3d 285, 484 N.E.2d 514, misplaced. In *Rice*, defendant was found guilty of misdemeanor retail theft. Following a sentencing hearing at which the State proved that defendant had been previously convicted of retail theft, the court convicted defendant of felony retail theft and sentenced him accordingly. On appeal, defendant argued that the State's failure to prove his previous conviction prior to the trial court's finding of guilt precluded enhancement of misdemeanor retail theft to felony retail theft. The appellate court indicated that although it was inclined to agree with defendant's position, it decided to affirm the trial court's judgment on the ground that defendant had failed to properly preserve the issue for review.

The pivotal distinction between *Rice* and the present case is that in *Rice*, the State had met its statutory burden of proof for enhancement of the misdemeanor retail theft conviction by proving that defendant had previously been convicted of retail theft. By contrast, in the present case, the State failed to meet its statutory burden of proving the prerequisites of the Class X sentencing provision.

■■ With respect to the State's alternative argument that defendant's prior convictions make him eligible for an extended term sentence, the State's failure to argue this statutory ground for sentencing before the trial court waives this issue on appeal. *People v. O'Neal* (1984), 104 Ill. 2d 399, 472 N.E.2d 441.

Finally, defendant contends that the trial court erred in failing to advise him of the possibility of probation if he elects to submit to treatment pursuant to the Alcoholism and Substance Abuse Act (the Act) (Ill. Rev. Stat. 1987, ch. 111½, par. 6301 *et seq.*). Specifically, defendant claims that the trial court had sufficient information to determine that he was a "drug abuser," and, thus, pursuant to section 22 of the Act,[1] the trial court was required to advise defendant that he may be placed on probation if he elects to submit to treatment and is accepted for treatment by a licensed program. Section 22 states, in pertinent part:

---

[1]Effective July 1, 1988, the Alcoholism and Substance Abuse Act was repealed and replaced by the Alcoholism and Other Drug Dependency Act (Ill. Rev. Stat. 1987, ch. 111½, par. 6351−1 *et seq.*). However, because the effective date of the new Act is subsequent to the date of sentencing in the present case, it is not applicable to this appeal. *People v. Teschner* (1980), 81 Ill. 2d 187, 407 N.E.2d 49.

"If a court has reason to believe that an individual convicted of a crime is an addict and the court finds that he is eligible to make the election provided for under Section 21, the court shall advise him that he may be placed on probation if he elects to submit to treatment and is accepted for treatment by a licensed program designated by the Department." (Ill. Rev. Stat. 1987, ch. 111½, par. 6322.)

Section 4.1 of the Act describes an "addict" as follows:

" 'Addict' means any person who habitually uses any drug, chemical, substance or dangerous drug other than alcohol so as to endanger the public morals, health, safety or welfare or who is so far addicted to the use of a dangerous drug or controlled substance other than alcohol as to have lost the power of self control with reference to his addiction." Ill. Rev. Stat. 1987, ch. 111½, par. 6304.1.

 It is well recognized that when the information conveyed to the trial court regarding defendant's drug problems is sufficient to give the court reason to believe that the defendant is an addict, the trial court is required to inform the defendant of the possible application of the Act. (*People v. Chaput* (1981), 100 Ill. App. 3d 982, 427 N.E.2d 595; *People v. Davis* (1981), 95 Ill. App. 3d 1097, 420 N.E.2d 1035.) "Reason to believe" has been held to be the semantic equivalent of probable cause. (*People v. Futia* (1983), 116 Ill. App. 3d 68, 452 N.E.2d 109.) However, a defendant's mere use of controlled substances does not make him an addict, and a court is not required to inform the defendant of the possible application of the Act every time a defendant claims to have a drug problem. *People v. Barry* (1987), 152 Ill. App. 3d 915, 504 N.E.2d 1381.

 In response to defendant's argument, the State contends that the trial court had no reason to believe that defendant was an addict. We agree. The only references at trial to defendant's drug use were a statement by defendant at the sentencing hearing that he had been in an outpatient drug rehabilitation program at an earlier date and a statement in the presentence report indicating that defendant had used marijuana, cocaine, heroin and amphetamines at one time, and that he had been at the Gateway Rehabilitation Center from 1984 to 1985. In our view, this information supports a conclusion that defendant has been rehabilitated with respect to his drug habit rather than a conclusion that he is currently an addict.

Further, we find that *People v. Barry* (1987), 152 Ill. App. 3d 915, 504 N.E.2d 1381, and *People v. Futia* (1983), 116 Ill. App. 3d 68, 452 N.E.2d 109, support the trial court's decision. In *Barry*, defendant

told both his probation officer and the trial court that he regularly used marijuana, amphetamines, barbiturates and LSD. The trial court failed to advise defendant about the Act. In affirming the trial court's judgment, the *Barry* court noted that defendant's statements were uncorroborated and stated, "Neither the court nor the probation officer was obliged to believe the defendant's statements. They may have been true. They may have been made up out of thin air." (*Barry*, 152 Ill. App. 3d at 918.) Similarly, in *People v. Futia* (1983), 116 Ill. App. 3d 68, 452 N.E.2d 109, the presentence report indicated that defendant was a current alcohol and drug abuser, specifically heroin, and that he had participated in two drug rehabilitation programs. The trial court failed to advise defendant about the Act. In affirming the trial court's judgment, the *Futia* court noted that defendant had never stated that he was an addict and an "abuser" is not synonymous with "addict." In the present case, there is even less evidence that defendant is addicted to drugs or alcohol than there was in either *Barry* or *Futia*.

In addition, we find those cases relied upon by defendant to be factually inapposite and unpersuasive. In each of those cases, there was extensive evidence of each defendant's drug addiction presented to the respective trial courts: *People v. Davis* (1981), 95 Ill. App. 3d 1097, 420 N.E.2d 1035 (defendant had voluntarily enrolled in a drug rehabilitation program; told probation officer he had been a heavy drug user for approximately 10 years and was under drug influence at the time he committed the offense; at the sentencing hearing, told the court he had committed crimes to use drugs); *People v. Chaput* (1981), 100 Ill. App. 3d 982, 427 N.E.2d 595 (at the sentencing hearing, defendant testified that at the time he had committed the offense, he had been under the influence of drugs and alcohol; defendant considered himself to have a drug problem; corroborative letter from defendant's rehabilitation counselor); *People v. Strange* (1984), 125 Ill. App. 3d 43, 465 N.E.2d 616 (the presentence report indicated that defendant had been using heroin and "Ts and blues" for the past 20 years; report recommended treatment in a drug abuse program; at sentencing hearing, defendant asked to be paroled to a rehabilitation program); *People v. Beasley* (1982), 109 Ill. App. 3d 446, 440 N.E.2d 961 (defendant, age 23, stated that he had been using marijuana since high school and had used heroin, cocaine and "tees and blues" regularly during incarceration); *People v. Melson* (1976), 36 Ill. App. 3d 71, 343 N.E.2d 258 (defendant broke into a drug store in order to steal drugs; the presentence report indicated that he had a serious dependence on drugs; letters from defendant's mother and his probation officer stated that defendant had

told them he could not control his use of drugs; probation officer recommended drug rehabilitation treatment). Accordingly, we conclude that the trial court did not err in failing to advise defendant of the possibility of treatment under the Act.

For the aforementioned reasons, we affirm that part of the trial court's order that found defendant guilty of burglary; reverse that part of the order which sentenced defendant as a Class X offender; and remand the cause for appropriate Class 2 sentencing.

Affirmed in part; reversed in part and remanded with instructions.

MANNING, P.J., and O'CONNOR, J., concur.