THE PEOPLE OF THE STATE OF ILLNOIS, Plaintiff-Appellee, *v.*
JAMES L. FUTIA, Defendant-Appellant.

Fourth District   No. 4—82—0723

Opinion filed July 14, 1983.

Daniel D. Yuhas and Janet Sinder, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

Defendant was charged by indictment in the circuit court of Champaign County with the offense of forgery in violation of section 17—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 17—3). He was found guilty by a jury and sentenced to an extended term of nine years' imprisonment.

On appeal he raised three issues: (1) reasonable doubt, (2) improper cross-examination, and (3) error in not advising him of the possibility of treatment under the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1981, ch. 91½, par. 120.1 *et seq.*)

The facts, briefly summarized, indicated that on July 14, 1982, defendant in the company of Kayrene Wright went in Wright's car to a drive-up facility of the Champaign County Bank and Trust Company and presented for payment a check purportedly made by Helen J. Reinbold with Teresa Hibler as payee. The endorsement on the instrument purports to be that of Hibler together with her address and account number. The teller to whom the check was presented became suspicious because both the check and the deposit slip were improperly filled out. She then called her supervisor and also made a note of the license number of the car on the check. The car was registered to Kayrene Wright. The teller, at the direction of her supervisor, placed a call to the First Federal of Champaign, the drawee bank. While this was going on, defendant asked over the intercommunication system what was taking so long, and then drove away before the transaction could be completed. The supervisor then called the police and turned the check over to them.

Reinbold, the purported maker of the check, testified that her purse containing her checkbook had been taken from her grocery cart in a market on July 3. She identified the check in question as being one from her checkbook and stated that she did not sign it nor authorize anyone else to do so. She further stated that on July 7 she received a phone call from the defendant who said he had obtained her wallet from her purse and would return it to her. She agreed to meet him and did so; he returned her wallet but not her checkbook, purse, or keys.

Hibler, the purported payee, testified that she knew the defendant and had previously written a check to him; that the address in the endorsement of the check in question, 27 Rowena, was her former address; and that her new address, 601 Poplar, was known to the defendant since he had been there.

Urbana police officer Lockard testified that he received the check

from the bank and forwarded it, together with the deposit slip and a set of defendant's fingerprints, to the FBI. He further stated that he had for several weeks prior to trial attempted to locate Kayrene Wright, defendant's companion, but was unable to do so.

A fingerprint expert from the FBI testified that the check contained four identifiable prints belonging to the defendant. These were found on the front of the instrument, near a crease in the middle. She found no prints belonging to Wright.

Defendant testified and attempted to lay all the blame on Kayrene Wright, claiming in substance that he was an innocent dupe. He stated that he had seen Reinbold's purse and contents at a friend's house and undertook to return it to her; that he knew Hibler lived on Poplar; and that she had written him a check earlier in June or July. He claimed that on the date of the offense, July 14, he was driving Wright's car in her company and she asked him to go to the bank to cash a check for her; that they did go to the bank and she handed him a folded check which he put into the pneumatic tube at the drive-in without looking at it; and that he drove away on her direction.

In cross-examination of the defendant, the State commenced to delve into his activities with Wright prior to going to the bank. There was objection and a conference in chambers was held on the matter. At that conference it was represented that defendant was accompanying Wright while she was "boosting clothes." It was stipulated that this phrase meant shoplifting. Defendant objected on the basis of prejudice, *i.e.*, other crimes, while the State maintained that the probative value outweighed the prejudice, *i.e.*, other crimes, while the State maintained that the probative value outweighed the prejudice, *i.e.*, defendant knew Wright to be a dishonest and untrustworthy person and that this bore on his knowledge and intent when he presented the check for payment. The trial court overruled the objections and the defendant testified before the jury that he had been driving around to several stores before going to the bank and that at one store she had sent him in to return some clothing which he later found out were stolen and the price tags changed, apparently the origin of the term "boosted."

■ Defendant's principal argument on the reasonable doubt issue is that the entire case against him was circumstantial and therefore any doubt should be resolved in favor of innocence. He further maintains that the theory of innocence is underpinned by his explanation of events. We do not agree. As to his explanation, the jury was not required to believe it. (*People v. Malmenato* (1958), 14 Ill. 2d 52, 150 N.E.2d 806.) He was in possession of Reinbold's purse more than a

week before the offense; he knew Hibler and was aware of her address and account number; his flight was evidence of his consciousness of guilt. *People v. Eston* (1977), 49 Ill. App. 3d 747, 364 N.E.2d 609.

Interestingly, defendant's fingerprints span the fold on the check, although he claimed to have handled it only in a folded condition. It would be physically impossible to make such prints unless the check were lying flat.

While there is no direct evidence that defendant made the instrument or knew it was forged, the evidence, taken as a whole, does not support his claim of nonparticipation. We find no basis for interfering with the verdict of the jury.

■■ ■ On the matter of the cross-examination: the parties argued the matter to the trial court and that court ruled on the basis of potential prejudice versus probative value. While we agree with the result, we find a firmer basis for the court's ruling. On direct examination, the defendant had testified to a conversation with Officer Lockard but limited it to what had happened to the prior check given to him by Teresa Hibler, what he had told Lockard about the possibility of Wright's having written the check, and why he had left the drive-in facility without completing the transaction. The prosecutor's question on cross-examination was:

> "Didn't you tell Investigator Lockard on August 17, 1982, when Mr. Jones [defense counsel] indicated you spoke with him it was about 9:45 in the morning, didn't you tell him that you and Kayrene Wright had been driving around in her car while she boosted clothes?"

The law has long been in this State that one cannot introduce a portion of a conversation and then bar the opposing party from bringing out the rest of that conversation. The most recent pronouncement is found in *People v. Weaver* (1982), 92 Ill. 2d 545, 556-57, 442 N.E.2d 255, 259:

> "In *People v. Nakutin* (1936), 364 Ill. 563, 571, this court stated that 'where a conversation is related by a witness the opposing party has a right to bring out all of the conversation on cross-examination.' (Accord, *People v. Kalpak* (1957), 10 Ill. 2d 411, 424; *Biel v. Wolff* (1970), 126 Ill. App. 2d 209; *Dispenza v. Picha* (1968), 98 Ill. App. 2d 110.) In view of the possibility that the jurors would be misled into thinking that the defendant has said nothing else, we believe the trial court should have allowed Mrs. Goodfellow to testify to the defendant's statement."

While Illinois has somewhat vacillated between the "wide-open" rule and the "restrictive" rule on cross-examination (see McCormick, Evidence sec. 21, at 46-49 (2d ed. 1972)), clearly, as to conversations, a party cannot pick and choose which elements of a conversation he wishes to place before a jury. By opening up the conversation he opens it in its entirety, not in discrete portion. Here the defendant opened up the subject on direct examination and he cannot complain if the prosecutor elected to tell the jury what else was said.

■ The matter of the Dangerous Drug Abuse Act presents a closer question. Section 10 of that Act (Ill. Rev. Stat. 1981, ch 91½, par. 120.10) provides, in relevant part:

> "If a court has reason to believe that an individual convicted of a crime is an addict or the individual states that he is an addict and the court finds that he is eligible to make the election provided for under Section 8, the court shall advise him that he may be placed on probation if he elects to submit to treatment and is accepted for treatment by a licensed program designated by the Commission."

In a prior opinion (*People v. Chaput* (1981), 100 Ill. App. 3d 982, 427 N.E. 2d 595) we held this provision to be mandatory. We employed that term because of the strong evidence in that case of drug addiction, unlike the instant case. In our opinion "reason to believe" is the semantic equivalent of probable cause. Therefore, the court must find probable cause that an individual is an addict before the admonition becomes mandatory. Probable cause is a familiar concept in the administration of criminal justice and requires no special definition in the context of this statute. There was probable cause in *Chaput*; there is not in the case at bar.

In the instant case, the presentence report stated in part: "Records reflect that the defendant is an alcohol and drug *abuser*, specifically heroin." (Emphasis added.) It then went on to describe two drug rehabilitation programs in which the defendant had been participating, but indicated that they were not successful and the defendant was removed from them, one within two weeks and the other within one day. In argument concerning an extended sentence, the State's Attorney stated that the defendant was "an admitted heroin addict."

The question then becomes: were these two items enough to give the court reason to believe that the defendant was an addict? We think not. The information in the presentence report states only that he was an "abuser," not an "addict." It was also concerned with affairs which had occurred almost a year prior to the sentencing hearing. "Addict" is defined in the Act as:

" 'Addict' means any person who habitually uses any drug, chemical, substance or dangerous drug other than alcohol so as to endanger the public morals, health, safety or welfare or who is so far addicted to the use of a dangerous drug or controlled substance other than alcohol as to have lost the power of self control with reference to his addiction." Ill. Rev. Stat. 1981, ch. 91½, par. 120.3—3.

The presentence report also indicated that the defendant was in apparent good health and had been incarcerated for a substantial period of time prior to trial without any indication of withdrawal symptoms. In this respect the instant case is strikingly similar to *People v. Morgan* (1977), 50 Ill. App. 3d 962, 965, 365 N.E.2d 1362, 1364, where the court said, "[T]he defendant resided in the Winnebago County Jail for four months, prior to sentencing, presumably cut off from any supply of heroin or any other unlawful drugs, without any apparent difficulty."

At no time did the defendant state that he was an addict; the presentence report stated only that he was an abuser at a time remote from the sentencing hearing; and he appeared in good health at the time of sentencing after incarceration. There was nothing in the report which would give the trial court any reason to believe that at the time he was an addict. The cases cited by defendant are inapposite in that the defendants there were in fact in drug rehabilitation programs at the time of sentencing and the court so knew.

The State's Attorney's statement to the court, while inept, was not evidence—argument never is—and it was made in the context of the extended term. The fair inference is that he was using the term "addict" in its generic, rather than its statutory, sense, a denigration of defendant's potential for rehabilitation.

■■ Defendant's final argument relates to the extended term. He does not maintain that he was not eligible for such a term, having been convicted of the same or greater class of felony within 10 years. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)(1).) However, he claims double enhancement in that the trial court used his prior criminal record once to support the extended term and next to impose only one year less than the maximum extended term for forgery, 10 years. He also argues that forgery is not a serious crime of violence.

The record does not support these contentions. Defendant's extended term was the result of the statute, not his prior record, and it was well within the discretion of the trial court to consider that record in fixing the years of the extended term. This is a function peculiarly within the province of the trial courts, and reviewing courts will

not interfere except in cases of clear abuse. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) Defendant's extensive criminal record clearly supports the trial court's actions.

Whether forgery is a serious crime or not is a matter for the legislature to decide. If the question were asked, doubtless different answers would come from bankers and art dealers than from mule skinners and highwaymen. Every offense is serious to some segment of society while lightly regarded by others. It is for this reason that consensus on the matter can only be reached in a body representing all factions.

The conviction and sentence are affirmed.

Affirmed.

GREEN and MILLER, JJ., concur.