THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT EMANUAL JONES, Defendant-Appellant.

Fourth District   No. 4—84—0753

Opinion filed May 2, 1985.

Daniel D. Yuhas and Judith N. Kirby, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Robert J. Biderman, of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE MILLS delivered the opinion of the court:
Burglary (three counts) and possession of burglary tools.
Jury: guilty.
Judge: six years for each burglary, two for the possession—all concurrent.
We affirm.
(Jones does not challenge his conviction—only the sentencing.)

I

Jones first contends that the trial court erred in not advising him of his right to elect treatment under the Alcoholism and Substance Abuse Act. (Ill. Rev. Stat., 1984 Supp., ch. 111½, par. 6301 *et seq.*) This admonition is mandated by section 23 of the Act if the trial court has reason to believe that the offender is an addict, or the offender so states, and the court finds that he meets the eligibility criteria found in section 21. (Ill. Rev. Stat., 1984 Supp., ch. 111½, pars. 6323, 6321; see also *People v. Richardson* (1984), 104 Ill. 2d 8, 470 N.E.2d 1024.) Jones argues that there was reason to believe he was an addict.

At trial, the evidence was that defendant burglarized a pickup truck and several cars parked on the Goodyear lot in downtown Champaign. He was seen carrying tools and rummaging through the vehicles shortly after the store closed. As the police arrived, he hid underneath the pickup truck, but his location was pointed out by an onlooker. The radio had been pried from the dash of one of the cars defendant had entered. Some knobs and plastic trim rings like those missing from the radio were in defendant's possession. Two screwdrivers were inside one of the automobiles defendant had entered, and pliers were found in another. Defendant told the arresting officer—and repeated at trial—that permission had been given him to be on the Goodyear lot. The service manager confirmed that he had agreed to let defendant work on an abandoned car which defendant had expressed an interest in buying. This "junk" (which was not the subject of the burglary charges) was the only vehicle defendant had been au-

thorized to enter.

Jones, the defendant, testified that he opened several car doors to lock them in order to insure nothing would be stolen, but discovered the locks did not function properly. This was also true of the rear hatch on the pickup truck. He denied loosening a car radio or having an intent to steal anything from the vehicles. According to defendant, he hid from the police because he "was sort of high that day" and had been mistreated by law enforcement officers in the past. Jones said that he was "high" from drinking alcohol earlier in the day with a friend.

Following trial and conviction, the presentence report showed that Jones left high school in 1976 and had a sparse employment history. His criminal record includes prior convictions for burglary and felony theft, plus a juvenile adjudication for aggravated assault. He is generally in good health but of limited intelligence. One section of the presentence report was devoted to alcohol and drug abuse:

> "Robert admitted he does drink alcohol and use drugs. Mr. Jones reported his drug use includes amphetamines, barbiturates and cocaine. Robert relayed to this officer alcohol and drugs are a problem for him because they get him in trouble. Mr. Jones indicated he has received out-patient counseling and detoxification at Prairie Center. As of this writing, no information has been received from Prairie Center concerning the defendant's prognosis from there. On October 9, 1984, this officer telephoned Prairie Center about Mr. Jones. On 8/2/83 the defendant was processed for a full intake as an out-patient client. Nancy Mercer felt the defendant was not appropriate for residential treatment. Mr. Jones utilized the Detox Unit at Prairie Center seven times. Robert's first detoxification occurred on 8/23/82 and his last visit was on 7/19/83. Mr. Jones never attended any out-patient counseling sessions according to the information given to this officer by Mary Thatch of Prairie Center."

At the sentencing hearing, defense counsel made no mention of a drug problem and requested the minimum period of incarceration.

Although Jones apparently has experienced problems due to alcohol and drug abuse, this did not give the trial court reason to believe he was an addict as that term is defined in the Act:

> " 'Addict' means any person who habitually uses any drug, chemical, substance or dangerous drug other than alcohol so as to endanger the public morals, health, safety or welfare or who is so far addicted to the use of a dangerous drug or controlled

substance other than alcohol as to have lost the power of self control with reference to his addiction. (Ill. Rev. Stat., 1984 Supp., ch. 111½, par. 6304.1.)

Here, the facts are similar to those in *People v. Futia* (1983), 116 Ill. App. 3d 68, 452 N.E.2d 109, decided under the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1983, ch. 91½, par. 120.1 *et seq.*), which the new law has supplanted. The relevant provisions of both acts are identical. The presentence report in *Futia* stated that the defendant "is an alcohol and drug abuser, specifically heroin." He had briefly—and unsuccessfully—participated in two drug rehabilitation programs. As here, the defendant was in apparent good health and had been incarcerated for a substantial period of time without any indication of withdrawal symptoms. On appeal, this court found nothing in the record which would give the trial judge reason to believe that at the time of sentencing the defendant was an addict. The same conclusion was reached in *People v. Jones* (1981), 97 Ill. App. 3d 619, 423 N.E.2d 235, where the offender was in sound health but, according to the presentence report, had used heroin in the past and had a continuing problem with drugs and alcohol.

A more solid indication of drug addiction occurred in *People v. Chaput* (1981), 100 Ill. App. 3d 982, 427 N.E.2d 595, and *People v. Beasley* (1982), 109 Ill. App. 3d 446, 440 N.E.2d 961, both cited by defendant. In *Chaput*, an appeal from convictions for reckless conduct and two counts of aggravated assault, the defendant testified that he was under the influence of Quaaludes and alcohol. He had enrolled in a residential rehabilitation program about a month prior to sentencing and was still there. A letter from defendant's counselor stated defendant was in need of continued therapy. In addition, he had a number of prior drug-related convictions. In *Beasley*, defendant Banks (age 23) had used marijuana in high school and had used heroin, cocaine, and "tees and blues" regularly until his incarceration. The trial judge in each case erred by not informing the defendant of the possible disposition under the Dangerous Drug Abuse Act.

But here, Jones testified that he had been *drinking* on the day in question. His testimony and his stays at a detoxification center suggest alcoholism rather than drug addiction. And although he related his problems with drug usage, there is no indication drugs have impaired his health or that he suffered withdrawal pains while in jail awaiting trial and sentencing. As in *Futia* and *Jones*, the information conveyed to the trial judge was insufficient to give reason to believe Jones was a drug addict.

He further argues that this court in *Futia* improperly equated

"reason to believe" with "probable cause." The phrases were said to be semantic equivalents more recently in *People v. Braje* (1985), 130 Ill. App. 3d 1054, which cited *Futia* with approval. Black's Law Dictionary 1081 (5th ed. 1979) defines *probable cause* as a "reasonable ground for belief in the existence of facts warranting the proceedings complained of." Recognizing that language is imprecise, the two concepts clearly may be interchanged without damage to the legislative intent. It is legal and semantical quibbling to say *Futia* and *Braje* have erected a higher standard.

In sum, the record indicates that defendant is a drug *abuser* but *not* an *addict*. Thus, the trial court was not required to inform him of the alternative treatment plan available to eligible addicts under the Act.

II

■ Jones also contends that it was an abuse of discretion to sentence him to concurrent six-year terms and asks that the sentences be reduced to three years, the statutory minimum for a Class 2 felony. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(5).) (Because he had previously been convicted of another Class 2 felony within 10 years, he was not a candidate for probation. Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3(c)(2)(F).)

This defendant was 23 years old, unemployed, had no dependents, and had dropped out of high school in 1976 during his freshman year. A prior burglary conviction in 1981 resulted in 30 months' probation with conditions that he serve 120 days in jail and undergo psychiatric treatment. In 1983, he was convicted of felony theft and placed on probation for 18 months. He was sporadic in contacting the probation department, and his adjustment was considered very poor. As a juvenile in 1977, defendant was committed to the Department of Corrections for aggravated assault. The dispositional report presented to the court at that time concluded that defendant (then 15 years of age) displayed "a predelinquent pattern and delinquent behavior including bicycle thefts, shoplifting, verbal and physical threats against numerous people, expulsion from school due to truancy and physical aggression ***." He allegedly was an abused child and was given psychological evaluations and in-patient counseling as a minor. His minister testified in mitigation and stated that defendant had been attending church services for several years although his attendance was spotty. And the State's Attorney testified that as he was leaving his office immediately after Jones' trial, defendant yelled, "[M]other fucking white bitch state's attorney, I'm going to kill you when I get out." (This ver-

bal attack evidently was directly at an assistant State's Attorney.)

A reasoned judgment as to a proper sentence depends on many factors, including the defendant's general moral character, mentality, habits, social environment, age, inclination to commit crimes, and the stimuli which motivated his conduct. (*People v. Dukett* (1974), 56 Ill. 2d 432, 308 N.E.2d 590.) While the offender's youth and potential for rehabilitation must be considered, of equal importance are the nature of the crime, protection of the public, deterrence, and punishment. (*People v. West* (1977), 54 Ill. App. 3d 903, 370 N.E.2d 265.) Furthermore, it is clearly settled that the sentence imposed by a trial judge will not be disturbed absent an abuse of discretion. *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.

Here, the burglaries were committed while Jones was on probation for two previous felony convictions, and his adjustment to probation was rated very poor. In light of his criminal record and the lack of any meaningful sign of rehabilitation, we cannot say that a six-year sentence is excessive or that the sentencing judge abused his discretion.

Affirmed.

WEBBER and MORTHLAND, JJ., concur.