THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN GRAYSON *et al.*, Defendants-Appellants.

First District (5th Division)   Nos. 85—1303, 85—2239 cons.

Opinion filed January 22, 1988.—Rehearing denied February 23, 1988.

Steven Clark and Karen Michels, both of State Appellate Defender's Office, of Chicago, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Joan Disis, and Caroline Koplin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

This is a consolidated appeal from the jury convictions of burglary and the sentences of defendants, John Grayson and Darren Lindsey. Defendants were sentenced, respectively, to seven years' and six years' imprisonment. The basic facts are as follows.

Responding to an early morning burglar alarm call, two police officers drove to a grocery store on South Kedzie in Chicago and parked the squad car with its spotlight shining upon a large hole in the rear of the store. As the officers approached the store, they observed defendants climbing out of the hole. According to the officers' testimony, the car spotlight illuminated Lindsey's face as he emerged first, immediately running away. As Grayson followed Lindsey out, a crowbar fell to the ground. One of the officers apprehended Grayson while the second officer pursued Lindsey, who was found hiding under a nearby porch. An assist unit placed defendants in an arrest wagon, whereupon the officers climbed through the hole into the store. They found three to five large plastic bags filled with food items from the store. When they were unable to find other persons, a canine unit was summoned. The unit discovered two more suspects hiding in the store. These two men were later identified as Robert and Edward Pride. All four suspects were then transported to the police station and subsequently charged with burglary.

Before trial, Robert Pride pleaded guilty but was not sentenced by defendants' trial time. Edward Pride entered a guilty plea on the second trial day. Although Robert Pride was not allowed to testify at trial because he asserted his fifth amendment rights, an offer of proof was made outside the presence of the jury that only he and his brother committed the burglary with no help from defendants. Edward Pride testified to the same effect. Further facts will be set forth in the discussion of the following issues on appeal.

The first issue raised by defendants consists of their contention that they were denied effective assistance of counsel because of fail-

ure to move for dismissal based on violations of their rights to a speedy trial. They argue that Grayson was tried 167 days into the term, and Lindsey was tried 128 days into the term. The State asserts that Grayson was tried on the 88th day, and Lindsey on the 68th day. We agree with the State.

■ Illinois law provides that a person in custody must be tried 120 days from the date he was taken into custody unless delay is caused by the defendant. (Ill. Const. 1970, art. I, §8; Ill. Rev. Stat. 1983, ch. 38, par. 103—5.) Defendants carry the burden to affirmatively establish a violation of the right to a speedy trial, and delays attributable to a defendant toll the statutory period. (*People v. Reimolds* (1982), 92 Ill. 2d 101, 440 N.E.2d 872.) A defendant is considered to have occasioned a delay when he requests a continuance, agrees to a continuance, or when his actions otherwise cause or contribute to a delay. (*People v. Bivins* (1981), 97 Ill. App. 3d 386, 422 N.E.2d 1044.) Applying these general rules to the delays contested by defendants as being attributable to them, we find no violations of their speedy trial rights.

■ First, defendants erroneously charge the court with delays occasioned by Grayson's motion for substitution of judges. This two-day delay is attributable to Grayson. The 43-day period between August 16 and September 28, 1984, is chargeable to both Grayson and Lindsey; the continuance was by agreement so defendants could obtain counsel.

Grayson next disputes the continuance occurring from October 5 to October 30, 1984. On September 28, Assistant Public Defender Preston Bowie was appointed to represent all defendants. On October 5, Grayson filed a *pro se* motion for severance which was later denied and a *pro se* motion for appointment of counsel other than a public defender because of complaints he had pending against the office of the public defender arising out of their representation of him in an unrelated case. The court took the appointment of counsel motion under advisement and informed Grayson that Assistant Public Defender Gary Stanton would continue to represent him until the motion was ruled on. Also on this date, Grayson expressly agreed to a continuance to October 30 for discovery purposes, including the arranging of an interview for Edward Pride concerning his participation in a Treatment Alternatives to Street Crime program (TASC). Not only did Grayson himself agree to this continuance but, in spite of the continuance's being partially for the purpose of the TASC interview, the interval was also partly due to Grayson's *pro se* motion and therefore 25 more days are attributable to him. (See *People v. Ruple* (1980), 82

Ill. App. 3d 781, 403 N.E.2d 129.) This time period also tolled the statutory period for Lindsey, as his counsel requested and agreed to the continuance.

On October 31, the court granted Grayson's request for alternative counsel and asked Grayson if he wanted a continuance to November 13 for that purpose, since no private attorney was then available. Grayson objected and stated that he wanted to demand trial. Earlier, upon filing his *pro se* motion, Grayson told the court that he could not represent himself and wanted an appointed attorney. After his objection, the court granted the State's motion to continue the matter to November solely for appointment of counsel for Grayson. Therefore, although the State made the motion, the 13-day delay can be charged to Grayson. See *People v. Ruple* (1980), 82 Ill. App. 3d 781, 403 N.E.2d 129.

Attorney Robert Romanoff appeared as counsel for Grayson on November 13 and the matter was continued to November 21 (8 days) at his request. On November 21, Romanoff filed a discovery answer and said he needed time for additional investigation; Assistant Public Defender Bowie, representing Lindsey, also requested additional time. The resulting continuance to December was by agreement, was set for the convenience of Grayson's counsel, and is attributable to both defendants. On December 4, the court was informed that defendants were ready for trial. When counsel were asked by the court if the next date of January 21, 1985, was by agreement, counsel Bower responded "yes," while counsel Romanoff made no comment. These 48 days tolled the statutory period for both defendants since Lindsey's attorney affirmatively answered and Grayson's attorney did not object to the trial date set by the court after earlier stating that his client was ready for trial. *People v. Baker* (1984), 127 Ill. App. 3d 565, 469 N.E.2d 602.

On subsequent dates there were other continuances, most of which were either by agreement or on motions by Grayson's counsel. The above discussion delineates 152 days chargeable to defendant Grayson, who had been in custody for 286 days at the time of trial. At least 60 more days were attributable to Grayson and are not contested. Thus, it is clear that Grayson's right to a speedy trial was not violated.

■ Defendant Lindsey claims that he was tried 128 days into the term. However, our examination of the record reveals that he also was tried within the requisite 120-day term after considering delays that were chargeable to him. Lindsey contends that several continuances obtained for the benefit of his codefendants should not be at-

tributed to him. However, the continuances encompassing the time period of October 5 to December 4, 1984, were expressly agreed to by Assistant Public Defender Bowie, who was representing him.

Additionally, on February 28, 1985, Lindsey asked to join in Grayson's *pro se* motion to dismiss alleging violations of their rights to a speedy trial. Mr. Bowie then withdrew as Lindsey's counsel and the court appointed Mr. Romanoff to represent Lindsey for the duration of the trial. Attorney Romanoff expressly agreed to a continuance to March 7 for a hearing on the motion and a subsequent agreement to continue again to March 22 so the court could review transcripts. The fact that later, on April 8, Mr. Romanoff told the court that Lindsey would not be joining in Grayson's *pro se* motion, and proceeded to argue the motion on Grayson's behalf, does not change the result of the continuances tolling the statute for both defendants. It is elemental that a defendant is bound by the acts of his counsel and any resultant delays are attributable to defendant (*People v. Clay* (1981), 98 Ill. App. 3d 534, 424 N.E.2d 814), and that agreement to a continuance by counsel is attributable to a defendant (*People v. Jump* (1984), 127 Ill. App. 3d 440, 468 N.E.2d 1278). Accordingly, Lindsey was brought to trial 68 days into the term, well within the requisite 120 days.

In reviewing speedy trial claims, this court must defer to the trial court's judgment. (*People v. Reimolds* (1982), 92 Ill. 2d 101, 440 N.W.2d 872.) Moreover, the trial court's decisions as to responsibility for the delays should be sustained absent a clear showing of abuse of discretion. (*Reimolds*, 92 Ill. 2d 101, 440 N.E.2d 872.) The record before us indicates no abuse of discretion. Accordingly, both defendants Grayson and Lindsey were timely tried.

■ Defendants' second contention is that their equal protection rights were violated by the State's use of peremptory challenges to exclude potential black jurors. Defendants are black and the record reflects that the State utilized 8 out of 10 possible peremptory challenges—six against black venirepersons and two against white venirepersons. Defense counsel exercised 10 peremptory challenges—all against white venirepersons. The ultimate jury consisted either of six white and six black jurors (according to defendants), or seven white and five black jurors (according to the State). The record does not resolve this discrepancy.

This trial was conducted during 1985. In 1986, the United States Supreme Court decided in *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, that persons could not be excluded from a criminal jury solely because of their race by use of peremptory challenges. The Court later applied the *Batson* rule retroactively to all

cases pending on direct appeal. (*Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708.) Under *Batson* a defendant must be afforded the opportunity to establish that purposeful discrimination occurred in the jury selection; this is accomplished by showing that the prosecution has utilized peremptory challenges to remove members of defendant's race from the venire and that these facts and any other relevant circumstances raise an inference that such challenges were based on race. *Batson* 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712.

■ In the present case, the record indicates that defendants did have such an opportunity. During *voir dire* examination, attorney Romanoff requested several sidebars off the record after the State exercised peremptory challenges. The record does reflect, however, that after the State had exercised five challenges to exclude one white and four black venirepersons, another sidebar occurred during which attorney Romanoff challenged the removal of a potential black juror. The State had already accepted or tendered three black jurors. In response to the defense allegation that "a pattern is being established," the State said that the rejected venirepersons did not fulfill the criteria the State was looking for and, further, that no prejudice was involved in the State's selection process. The State asserted that it would accept any black juror that it considered suitable and, in fact, thereafter accepted at least two more black jurors. After jury selection was completed, the trial court put on the record the race and gender of both the chosen jurors and the persons excluded by both the State's and defense's peremptory challenges. As noted before, the record is unclear as to whether the final jury included a composition of six to six or six to five. This set of circumstances is not indicative of a purposeful exclusion of jurors because of their race.

We are fortunate in this case that, although this jury was selected before the *Batson* decision, the trial court established a competent record enabling us to review the propriety of the exercise of peremptory challenges. Due to the retroactive application of *Batson*, which itself is only two years old, there are only a handful of Illinois Appellate Court cases and several supreme court supervisory orders that have considered the application of *Batson*. Most of those cases that have been remanded for a *Batson* hearing did not involve a record as informative on the issue as the one before us. The present record is sufficiently detailed so that it may be determined that defendants had an opportunity to question the State's use of peremptory challenges and that they failed to show a discriminatory purpose for those challenges. Accordingly, defendants' *Batson* claim is without merit.

■ Defendants next argue that they were not proved guilty beyond a reasonable doubt where the only evidence was circumstantial and was contradicted by codefendant Edward Pride's testimony. Additionally, an offer of proof was made regarding Robert Pride's prior statement that defendants had not participated in the burglary. This contradicted the testimony of the two arresting officers.

The elements of burglary consist of a person entering a building without authority with the intent to commit a felony or theft. (Ill. Rev. Stat. 1983, ch. 38, par. 19—1(a).) A theft need not be completed to constitute a burglary based on larcenous intent. (*People v. Baker* (1978), 57 Ill. App. 3d 401, 372 N.E.2d 438.) Here, the police officers observed defendants leaving the store through a hole chiselled in the wall; as defendants exited, a crowbar fell to the ground. The store owner testified that he had not given defendants permission to enter his store and, further, that food items that had been on the shelves at closing time were, at the time of defendants' arrest, found in large plastic bags on the floor of the store. Contrary to defendants' assertions, the elements of burglary can be proved by circumstantial evidence. (*People v. Richardson* (1984), 104 Ill. 2d 8, 470 N.E.2d 1024.) Moreover, the inconsistent testimony of Edward Pride goes to the credibility of the witnesses and is a matter for the trier of fact, not this court. (*People v. Bragg* (1984), 126 Ill. App. 3d 826, 467 N.E.2d 1004.) Thus, it is clear that the evidence supported a finding of guilty beyond a reasonable doubt.

■ The fourth issue raised by defendants alleges ineffective assistance of counsel on the basis that their trial counsel failed to argue for dismissal grounded on violations of their rights to speedy trial. Since we have found no such violation, this argument is without merit. See *People v. Ruple* (1980), 82 Ill. App. 3d 781, 403 N.E.2d 129.

■ Defendant Lindsey further contends that he was denied effective assistance of counsel when attorney Romanoff withdrew his joinder to Grayson's *pro se* motion to dismiss, where counsel failed to preserve the issue of the State's use of peremptory challenges in his motion for a new trial although the issue was preserved in Grayson's motion, and where counsel failed to suggest that Lindsey be sentenced under the Alcohol and Substance Abuse Act (Ill. Rev. Stat. 1985, ch. 111½, par. 6301 *et seq.*).

The standard used to determine ineffective assistance of counsel requires a defendant to show both a deficiency in counsel's performance and resultant prejudice. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Albanese*

(1984), 104 Ill. 2d 504, 473 N.E.2d 1264.) Moreover, in order to demonstrate prejudice, it must be established that, but for counsel's unprofessional errors, there was a reasonable probability that the result of the proceeding would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) Such a showing has not been made in the present case.

Attorney Romanoff did not act improperly in withdrawing Lindsey from joinder in Grayson's *pro se* motion for discharge. Counsel could not withdraw Grayson since Grayson himself filed the motion. Since the record clearly indicates that Lindsey was timely tried, the trial court was precluded by law from granting such a motion. Therefore, withdrawal of Lindsey's joinder was appropriate since Lindsey's claim was without merit. Moreover counsel's decision to exclude a *Batson* claim from Lindsey's motion for a new trial, which motion raised many other issues, did not constitute ineffective assistance of counsel. Mr. Romanoff had already raised the issue several times before the trial court and was unable to show any purposeful discrimination in the selection of the jury. Therefore, the exclusion of a futile claim from Lindsey's post-trial motion neither prejudiced him nor denied him a fair trial. See *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.

■ Incompetence was also not shown by the failure to advise Lindsey about the Alcoholism and Substance Abuse Act. (Ill. Rev. Stat. 1985, ch. 111½, par. 6323.) Section 23 provides that if a court has reason to believe a defendant is an addict, or the defendant states that he is an addict, he must be advised that he may be placed on probation if he elects to submit to treatment. Lindsey indicated on the presentence investigation report that he was in "good physical condition" and "had no past health problems." Lindsey also reported that he had used heroin and cocaine for the past three to four years. At the time of this burglary, he was on four years' probation for burglary and had had two misdemeanor convictions for possession of cannabis in addition to a probation for burglary as a juvenile. In response to a State request for a maximum sentence, defense counsel asked that Lindsey be given a minimum sentence and should be "allowed to enter some sort of drug program down there."

The law defines a drug addict as "any person who habitually uses any drug, [or] chemical *** so as to endanger the public morals, health, safety or welfare or who is so far addicted to the use of a dangerous drug *** as to have lost the power of self control with reference to his addiction." (Ill. Rev. Stat. 1985, ch. 111½, par. 6304.1.) The court in *People v. Futia* (1983), 116 Ill. App. 3d 68, 452 N.E.2d

109, considered a similar situation. In *Futia*, defendant's presentence report stated that he was in good health and also indicated that he was a drug abuser of heroin and, in fact, had attended several rehabilitation programs. The *Futia* court held that such circumstances do not support an inference of addiction. More recently, it was held that a trial court need not advise a defendant of an election of treatment if he is merely a drug abuser rather than an addict. (*People v. Jones* (1985), 132 Ill. App. 3d 764, 477 N.E.2d 836.) A trial court is required by the Act to inform a defendant of an election for treatment only if it has reason to believe defendant is an addict. (*Jones*, 132 Ill. App. 3d 764, 477 N.E.2d 836.) The record in the present case supports a reasonable belief that defendant was a drug user, not an addict. Since this court concludes that the record does not show that Lindsey was an addict, there was no ineffective assistance of counsel or error by the trial court in failing to advise Lindsey of these statutory provisions.

▆▆▆ The final contention alleges that the trial court erred when it refused to appoint other counsel upon attorney Romanoff's request when Grayson's *pro se* post-trial motion alleged ineffective assistance of counsel. The trial court, in refusing the request to withdraw, noted that in reviewing the record, it found that "Mr. Grayson has followed a course of conduct designed to subvert the orderly process of this court and the criminal justice system." The court further stated that the allegation of incompetency against Mr. Romanoff "is totally without merit." After carefully examining Grayson's post-trial motion and the record, we agree with the trial court. In his motion Grayson alleged incompetency on the basis that he didn't trust the court-appointed attorney. This is not a sufficient basis to support a claim of incompetency. (See *People v. Johnson* (1981), 98 Ill. App. 3d 228, 424 N.E.2d 610; see also *People v. Jackson* (1981), 100 Ill. App. 3d 318, 426 N.E.2d 1132.) No actual incompetence was demonstrated nor was prejudice to defendant shown.

For the above reasons, we affirm the trial court's decision as to both defendants.

Affirmed.

LORENZ, P.J., and PINCHAM, J., concur.