2016 IL App (3d) 140293

Opinion filed January 21, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2016

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 9th Judicial Circuit, Knox County, Illinois, |
| Plaintiff-Appellee, | ) ) | Appeal No. 3-14-0293 |
| v. | ) ) | Circuit No. 13-CF-30 |
| KAI A. LEFLER, | ) ) ) | Honorable Scott Shipplett, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE CARTER delivered the judgment of the court, with opinion.
Justices Holdridge and McDade concurred in the judgment and opinion.

**OPINION**

¶ 1        A jury found defendant, Kai A. Lefler, guilty of second degree murder (720 ILCS 5/9-2(a) (West 2012)) and felony murder (720 ILCS 5/9-1(a)(3) (West 2012)).  In addition, the jury found defendant guilty of unlawful possession of a weapon by a felon (UPWF) (720 ILCS 5/24-1.1(a) (West 2012)) and attempted burglary (720 ILCS 5/8-4(a), 19-1(a) (West 2012)).  The trial court entered a conviction and sentence for felony murder, UPWF, and attempted burglary.

¶ 2        On appeal, defendant argues that a new trial is warranted because the guilty verdicts for second degree murder and felony murder were legally inconsistent, and that the trial court consequently usurped the jury's function in choosing to enter a conviction and sentence for

felony murder. Alternatively, defendant argues that the jury's finding of second degree murder necessarily indicates the presence of some mitigating factor, and that the trial court thus erred at sentencing when it found no mitigating factors applicable. Finally, defendant contends that his conviction for attempted burglary was improper because that offense also served as the predicate offense for his felony murder conviction.

¶ 3        Upon review, we vacate defendant's conviction and sentence for attempted burglary. However, we find that the jury's verdicts were not legally inconsistent and that the trial court did not err in finding no statutory mitigating factors applicable to defendant. Accordingly, we affirm defendant's convictions and sentences for felony murder and UPWF.

¶ 4                                                    FACTS

¶ 5        The State charged defendant by indictment with four counts of first degree murder in the death of Robert Kilgore. The charges included: the intentional murder of Kilgore (720 ILCS 5/9-1(a)(1) (West 2012)), the knowing murder of Kilgore (720 ILCS 5/9-1(a)(1) (West 2012)),[1] taking actions that defendant knew created a strong probability of death or great bodily harm to Kilgore (720 ILCS 5/9-1(a)(2) (West 2012)), and felony murder (720 ILCS 5/9-1(a)(3) (West 2012)). The State also charged defendant with two counts of second degree murder (720 ILCS 5/9-2(a) (West 2012)). The two second degree murder charges corresponded to subsections

[1]Section 9-1(a)(1) of the Criminal Code of 2012 (Code) provides that first degree murder is committed where one "either *intends* to kill or do great bodily harm to that individual or another, or *knows* that such acts will cause death to that individual or another." (Emphases added.) 720 ILCS 5/9-1(a)(1) (West 2012). Thus, although they appear in the same statutory subsection, *intentional* murder and *knowing* murder may be charged as separate counts or separate theories of a single murder.

2

(a)(1) and (a)(2) of the first degree murder statute.  The State further charged defendant with involuntary manslaughter (720 ILCS 5/9-3(a) (West 2012)), UPWF (720 ILCS 5/24-1.1(a) (West 2012)), and attempted burglary (720 ILCS 5/8-4(a), 19-1(a) (West 2012)).

¶ 6       The evidence at defendant's trial tended to establish that around midnight on January 20, 2013, Kilgore discovered defendant attempting to break into his car.  Kilgore, who stood six feet, one inch tall and weighed 412 pounds, attempted to restrain defendant.  A struggle ensued; when defendant attempted to flee, Kilgore pulled him to the ground.  An onlooker noticed that defendant had a knife and that Kilgore kicked defendant in the head.  When defendant was finally able to flee, Kilgore discovered that he had been stabbed.  One witness described Kilgore as bleeding "an unimaginable amount of blood," while the first police officer on the scene described the wound as "the deepest cut I've ever seen."  Kilgore explained to witnesses and to the police officers that he had caught defendant attempting to break into his car.  Kilgore died later that morning.

¶ 7       Officers searching the surrounding area found a flashlight, a pair of wire cutters, a black leather glove, and defendant's cell phone.  Defendant was arrested at 6:30 a.m. that day.  A search of the house in which defendant was found uncovered a matching black leather glove, as well as the coat defendant was wearing during the altercation.  The coat was found soaking wet on the bathroom floor.  The clothes defendant had worn the previous day were wet and had a chemical smell to them, as if cleaning solution had been applied.  Defendant's sweatshirt appeared to have a bloodlike stain.

¶ 8       Defendant testified that he was on a walk the night of the altercation.  His hood was up and pulled tight around his head because of the cold weather.  As defendant neared Kilgore's house, he felt as if he might throw up, so he placed his hands on his knees.  As he stood up, he

3

heard someone shout: "hey, what are you doing?" Because the voice sounded hostile, defendant ran to the other side of the street. Moments later, he was tackled by a large man, Kilgore, who lay on top of him. Kilgore began to choke defendant, who then soiled himself because he was scared for his life. In trying to free himself from Kilgore, defendant used his knife to cut Kilgore. Defendant testified that he was defending himself, and that Kilgore was only injured when Kilgore swung his arms at defendant. After being kicked in the head by Kilgore, defendant fled from the scene. When he returned to the house where he was staying, he took a shower while wearing his clothes because he was nauseous and had defecated in his pants.

¶ 9    Following closing arguments, the court delivered the jury instructions. During instructions, the court explained that it would refer to the type of first degree murder found in the first three counts of the indictment—that is, intentional, knowing, and strong probability of murder—as "Type A" first degree murder. It would refer to felony murder as "Type B" first degree murder. The court explained that:

> "If the State proves beyond a reasonable doubt that the defendant is guilty of First Degree Murder (Type A), the defendant then has the burden of proving by a preponderance of the evidence a mitigating factor is present so that he is guilty of the lesser offense *** of Second Degree Murder, and not guilty of First Degree Murder."

The court went on to explain that a mitigating factor exists so as to reduce first degree murder type A to second degree murder "if, at the time of the killing, the defendant acts under a sudden and intense passion resulting from a serious provocation by the deceased." Such a mitigating factor also exists "if at the time of the killing the defendant believes that circumstances exist

4

which would justify the deadly force he uses, but his belief that such circumstances exist is unreasonable."

¶ 10 As to felony murder, the court instructed the jury that "a person commits the offense of First Degree Murder (Type B) when he kills an individual without lawful justification if, in performing the acts which caused the death, he is attempting to commit the offense of burglary." Thus, the court explained, the jury could not find defendant guilty of felony murder—or first degree murder type B—if it found him not guilty of attempted burglary.

¶ 11 In explaining the verdict forms, the court instructed the jury that it would be given four forms with respect to first degree murder type A: (1) not guilty of first degree murder type A or involuntary manslaughter; (2) guilty of first degree murder type A; (3) guilty of second degree murder; or (4) guilty of involuntary manslaughter. The jury was instructed to first determine whether each of the propositions for first degree murder type A was met, and, if they were, then determine whether a mitigating factor was present that would reduce that to second degree murder. With respect to the felony murder—or first degree murder type B—charge, the court instructed the jury that it would receive only two forms: guilty or not guilty.

¶ 12 The jury found defendant guilty of felony murder (first degree murder type B), second degree murder, UPWF, and attempted burglary. The forms returned by the jury provided no information beyond those verdicts. The trial court later noted that sentencing defendant for both felony murder and second degree murder would violate the one-act/one-crime doctrine. Accordingly, of those two offenses, the court would only sentence defendant for felony murder.

¶ 13 Defendant argued at sentencing that mitigating factors applied. Specifically, defendant argued that: (1) he acted under strong provocation, and (2) there were substantial grounds tending to justify his offense, although failing to establish a defense. The court rejected

5

defendant's arguments. Referring to the two possible factors that mitigate first degree murder down to second degree murder, the court stated: "[I]t's not clear which of those two factors [the jury] would have decided." The court further found that defendant did not act under strong provocation from Kilgore, concluding that "there are zero factors in mitigation." The court imposed concurrent sentences of 50 years' imprisonment for the offense of felony murder, 5 years' imprisonment for UPWF, and 4 years' imprisonment for attempted burglary.

¶ 14                                            ANALYSIS

¶ 15          On appeal, defendant raises three distinct arguments. First, defendant argues that the jury's verdicts for felony murder and second degree murder are legally inconsistent. Next, defendant contends that the trial court abused its discretion in failing to find any mitigating factors applicable to his case. Finally, defendant argues that the trial court erred in entering a conviction for the offense of attempted burglary. Upon review, we conclude that defendant's first two arguments are without merit. Accordingly, we affirm his convictions and sentences for felony murder and UPWF. However, we agree that defendant's conviction for attempted burglary was erroneous, and vacate that conviction.

¶ 16                                I. Legally Inconsistent Verdicts

¶ 17          Defendant argues that the jury's verdicts of guilty on both second degree murder and felony murder are legally inconsistent. Specifically, defendant contends that a single murder may not be both mitigated and unmitigated. Defendant maintains that the trial court subsequently usurped the jury's function when it chose to sentence him on the felony murder verdict rather than recalling the jury to clarify the verdicts.

¶ 18          First degree murder in Illinois is governed by section 9-1 of the Code. 720 ILCS 5/9-1 (West 2012). That statute provides as follows:

6

"(a) A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:

　　　(1) he either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or

　　　(2) he knows that such acts create a strong probability of death or great bodily harm to that individual or another; or

　　　(3) he is attempting or committing a forcible felony other than second degree murder." *Id.*

The statute thus provides for four separate theories of first degree murder: intentional or knowing murder under paragraph 1 (see *supra* ¶ 5 n. 1), strong probability murder under paragraph 2, and felony murder under paragraph 3. *E.g.*, *People v. Bailey*, 2013 IL 113690, ¶ 1 (referring to first degree murder under paragraph 3 as "felony murder").

¶ 19　　　Second degree murder in Illinois is governed by section 9-2 of the Code. 720 ILCS 5/9-2 (West 2012). That statute provides as follows:

"(a) A person commits the offense of second degree murder when he or she commits the offense of first degree murder *as defined in paragraph (1) or (2) of subsection (a) of Section 9-1 of this Code* and either of the following mitigating factors are present:

　　　(1) at the time of the killing he or she is acting under a sudden and intense passion resulting from serious provocation by the individual killed or another whom the offender endeavors to kill, but he or she negligently or accidentally causes the death of the individual killed; or

(2) at the time of the killing he or she believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his or her belief is unreasonable." (Emphasis added.) *Id.*

It is well settled that the offense of second degree murder is not an offense of a different mental state than first degree murder, but an offense of first degree murder *plus* one of the two listed mitigating factors. See, *e.g.*, *People v. Jeffries*, 164 Ill. 2d 104, 122 (1995); *People v. Newbern*, 219 Ill. App. 3d 333, 353 (1991).

¶ 20        Jury verdicts are legally inconsistent when an essential element of each offense is "found to exist and to not exist even though the offenses arise out of the same set of facts." *People v. Frieberg*, 147 Ill. 2d 326, 343 (1992). The verdicts in the present case were not legally inconsistent. In finding defendant guilty of second degree murder, the jury necessarily determined that the State had proven beyond a reasonable doubt the elements of some theory of first degree murder under paragraphs 1 or 2 of the first degree murder statute—or what the court referred to as first degree murder type A. It then must have determined that defendant had proven by a preponderance of the evidence that one of the two mitigating factors listed in the second degree murder statute was applicable.[2] This finding of mitigation, however, would not preclude the jury from also finding defendant guilty of felony murder under paragraph 3 of the first degree murder statute, murder while attempting the forcible felony of burglary. 720 ILCS 5/9-1(a)(3) (West 2012).

---

[2]The jury's verdict forms do not indicate which theory of type A first degree murder it found the State to have proven, nor do they indicate which mitigating factor it found applicable.

8

¶ 21    The second degree murder statute clearly states that it applies *only* to paragraphs 1 and 2 of the first degree murder statute. That is, when a jury finds a defendant to have committed first degree murder under paragraphs 1 or 2, it must next determine whether one of the mitigating factors is present. When a jury finds a defendant to have committed first degree murder under paragraph 3—that is, felony murder—there is no second step. Felony murder may not be mitigated to second degree murder. That the jury found a mitigating factor to exist in the present case would have no bearing on its finding that defendant was also guilty of felony murder. Accordingly, the two verdicts were neither legally nor logically inconsistent.

¶ 22    In reaching this conclusion, we reject defendant's reliance on our supreme court's decision in *People v. Porter*, 168 Ill. 2d 201 (1995). Specifically, defendant relies on *Porter* in support of the following proposition: "A single murder cannot be both provoked and unprovoked at the same time."[3] *Id*. at 214.

¶ 23    In *Porter*, the defendant was found guilty of a strong probability of murder under paragraph 2 of the first degree murder statute (count I), as well as intentional (count II) and knowing (count III) murder under paragraph 1 of the first degree murder statute. *Id*. at 211-12. He was also found guilty of felony murder (count IV). *Id*. at 212. The jury found that counts I (strong probability) and II (intentional) were mitigated to second degree murder, but returned verdicts of first degree murder as to counts III (knowing) and IV (felony). *Id*. The trial court found that the apparent finding of mitigation with respect to counts I (strong probability) and II (intentional) was inconsistent with the first degree murder finding in count III (knowing). *Id*. at 211. Accordingly, the court opted to sentence defendant on the count IV (felony). *Id*.

---

[3]Notably, defendant amends this quote from *Porter* in his brief to read "a single murder cannot be both [mitigated] and [unmitigated] at the same time."

¶ 24    The supreme court agreed with the trial court, and held that the verdicts were legally inconsistent. *Id*. at 214. By finding mitigation as to counts I (strong probability) and II (intentional), but not to count III (knowing), the jury had found that the murder was both provoked and unprovoked. *Id*. Notably, the court never stated nor implied that the verdict as to count IV (felony) was itself inconsistent with any other verdict. Instead, the court took issue with the trial court's remedy, holding that the trial court should have ordered the jury to resume deliberations and return consistent verdicts. *Id*.

¶ 25    In the present case, the jury was only given one set of verdict forms with respect to first degree murder type A. This foreclosed the possibility that the jury might return inconsistent verdicts of mitigated and unmitigated murder among the various theories available in paragraphs 1 and 2 of the first degree murder statute, because only first degree murder type A may be mitigated. Instead, the jury returned one verdict in relation to first degree murder type A (intentional, knowing, or strong probability), and one verdict in relation to first degree murder type B (felony). As these verdicts were not inconsistent—nor could they have possibly been inconsistent—the trial court was free to proceed to sentence defendant on the more serious offense of felony murder. See, *e.g.*, *People v. Artis*, 232 Ill. 2d 156, 170 (2009).

¶ 26    Our holding does not conflict with *Porter*'s principle that "[a] single murder cannot be both provoked and unprovoked at the same time." *Porter*, 168 Ill. 2d at 214. Of course, it must be one or the other. However, a guilty verdict on a charge of felony murder does not dictate that a murder was unmitigated. Indeed, whether the mitigating factors in the second degree murder statute were present simply does not matter when a defendant is found guilty of felony murder.

¶ 27                    II. Mitigating Factors at Sentencing

¶ 28    Defendant next argues that the trial court abused its discretion in finding that none of the statutory factors in mitigation were applicable to defendant. Specifically, defendant contends that the two mitigating factors found in the second degree murder statute are identical to two statutory factors which a court must consider at sentencing. As the jury must necessarily have found at least one of those two mitigating factors present in order to find defendant guilty of second degree murder, defendant maintains that the trial court erred in finding neither of them present.

¶ 29    Section 5-5-3.1(a) of the Unified Code of Corrections provides a list of factors which "shall be accorded weight in favor of withholding or minimizing a sentence of imprisonment." 730 ILCS 5/5-5-3.1(a) (West 2012). At issue here are factor 3 (that "defendant acted under a strong provocation") and factor 4 (that "[t]here were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense"). *Id.*

¶ 30    Sentencing is a function peculiarly within the province of the trial court. *People v. Futia,* 116 Ill. App. 3d 68, 74 (1983). Sentencing determinations rest within the sentencing judge's discretion, and a sentence that conforms to statutory guidelines will only be overturned on appeal where that discretion has been abused. *People v. Rogers,* 197 Ill. 2d 216, 223 (2001).

¶ 31    This court is aware of no authority—and defendant has failed to cite any authority—that would suggest that a sentencing judge is bound to apply a statutory mitigating factor that is implicated by the jury's verdict. Such a rule would run counter to the well-settled notion that sentencing is the province of the trial court. *E.g.*, *People v. Simms*, 60 Ill. App. 3d 519, 521 (1978). Indeed, it is equally well settled that the weight to be assigned to factors in aggravation and mitigation and the balance between those factors are matters within the sentencing court's discretion. *E.g.*, *People v. Latona*, 184 Ill. 2d 260, 272 (1998); *People v. Tatum*, 181 Ill. App. 3d

11

821, 826 (1989). A sentencing judge somehow bound to *apply* a mitigating factor, then, would nevertheless have the discretion to give that factor *de minimis* effect.

¶ 32       Moreover, even assuming a judge is obligated to apply a mitigating factor implicitly found by a jury, such a rule would be inapplicable to the case before us. Here, the jury's verdict implied that it found at least one of the two mitigating factors in the second degree murder statute to be applicable. It did not indicate which of those factors applied. As the judge, in his discretion, found neither to apply, defendant would ask that the trial court pick one at random, and assign to that factor an arbitrary amount of weight. Not only would this result be absurd, it would run afoul of our supreme court's disinclination toward rigid rules that restrict the function of a sentencing judge. See *People v. Saldivar*, 113 Ill. 2d 256, 268 (1986).

¶ 33       The trial court in the present case was not bound to apply any statutory factors in mitigation. The record demonstrates that the court gave fair and ample consideration to the statutory mitigating factors argued here by defendant. Accordingly, the court's sentence does not constitute an abuse of discretion.

¶ 34                                III. Attempted Burglary Conviction

¶ 35       Finally, defendant argues that the trial court erred in entering a conviction for attempted burglary. Specifically, defendant contends that attempted burglary served as the predicate offense for his felony murder conviction, and is therefore a lesser included offense. Consequently, defendant argues, he may not be convicted of both offenses, and urges that we vacate his conviction for attempted burglary.

¶ 36       The State concedes that a defendant convicted of felony murder may not also be convicted on the underlying predicate offense. See *People v. Reed*, 2014 IL App (1st) 122610, ¶ 71. The State thus asks this court to vacate defendant's conviction and sentence for attempted

12

burglary. After thoroughly examining the record in this case, as well as the relevant case law on this issue, we accept the State's concession. Defendant's conviction and sentence for attempted burglary are vacated.

¶ 37                                    CONCLUSION

¶ 38          The judgment of the circuit court of Knox County is affirmed in part and vacated in part.

¶ 39          Affirmed in part and vacated in part.